IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
ADT SECURITY SERVICES, INC.,    )
et al.,                         )
                                )
            Plaintiffs,         )
                                )
    v.                          )    No. 10 C 4382
                                )
LISLE-WOODRIDGE FIRE            )
PROTECTION DISTRICT, et al.,    )
                                )
            Defendants.         )
```

MEMORANDUM OPINION AND ORDER

After extended litigation and a thorough vetting of the issues by the parties and by this Court itself, it issued a July 20, 2011 memorandum opinion and order ("Opinion") granting a partial summary judgment against Lisle-Woodridge Fire Protection District ("District") calling for a permanent injunction, which was then issued on August 16. As District's counsel had announced during the most recent court sessions addressing the appropriate terms of that injunction, District has now filed a motion to stay its enforcement. This memorandum opinion and order explains why the motion is without merit and must be denied.

As this Court has repeatedly explained during the course of this litigation, this case involves an act of illegal self-aggrandizement by a fire protection district. Heedless of the fact that the Illinois General Assembly has carefully circumscribed the powers of fire protection districts in the

course of creating them and defining the scope of their authority,[1] District has treated itself as though it were some sort of general legislative body, with wide-ranging power to expand its own authority beyond the boundaries set by its creator.  That violation of fundamental principles by District in trampling on the rights of companies going about their legitimate business of providing alarm security services led this Court to enter a preliminary injunction (presently on appeal) and now the permanent injunction.

District's counsel begin their argument for a stay in a manner that has regrettably typified too many of their legal arguments during the course of this litigation--they impermissibly reframe the operative legal principles in a way that seeks to ease their burden of persuasion.  Thus their Motion at 2, in stating the factors to be considered as to the grant or denial of a stay of a permanent injunction order, lists the first and vitally important factor, as reported in the per curiam decision in <u>Etherly v. Schwartz</u>, 590 F.3d 531, 532 (7th Cir. 2009), as "likelihood of success on appeal"--but the actual language in <u>Etherly</u> requires "a <u>strong</u> <u>showing</u> that it is likely to succeed on the merits of its appeal."  Indeed, on that score

---

[1]  That restrictive approach has consistently been followed by the Illinois courts, which have regularly refused to grant implied authority to such districts, or to read general statutory language expansively, where express authority has not been conferred by the legislative provisions.

Etherly expressly cited the Supreme Court's decision in Hilton v. Braunskill, 481 U.S. 770, 776 (1987), which has definitively stated the factors in these terms:

> Different Rules of Procedure govern the power of district courts and the courts of appeals to say an order pending appeal. See Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

This Court will of course be governed by those standards, not by District's watered-down version. And in those terms the analysis shows that District's presentation is skewed, effectively turning those factors topsy-turvy.

It may be worth spending a moment to think about why such a set of standards is called for. Remember that in the case of a money judgment Fed. R. Civ. P. ("Rules") 62(a) and 62(d) call for an automatic stay on the posting of a supersedeas bond, so that the prevailing plaintiff is spared any risk of defendant's insolvency or of other uncollectibility of the judgment--only delay in collection is involved, and the addition of interest is viewed as compensating for that delay. But where injunctive relief is involved, Rule 62(a)(1) reverses the presumption of an automatic stay by requiring the appellant to obtain an express court order.

3

That approach recognizes the fact that the harm inflicted by a stay against a prevailing plaintiff is often irreparable or, at a minimum, may be difficult to quantify despite its real-world impact. No good reason justifies imposing that risk on the party that has prevailed after fighting out the issues on the merits. Hence the courts have developed the quoted four-factor test to promote reasonable analysis of the issues.

As for District's need to make the requisite strong showing of success on its appeal, the Opinion has provided chapter and verse on the absence of merit in District's illegal power grab, and there is no need to repeat that analysis here. Moreover, it is surely worth noting (as Opinion at 1 n.2 pointed out) that District had earlier sought a stay in pursuit of its appeal from this Court's preliminary injunction order, and our Court of Appeals' December 28, 2010 order denying such a stay stated:

> The appellant has not presented arguments that demonstrate a likelihood of success on appeal or irreparable injury absent a stay.

This Court is not of course presuming to predict the ultimate conclusion on the merits by the Court of Appeals. Instead it emphasizes that now all of the votes are in and the ballots counted, and the Opinion has awarded summary judgment against District. Its likelihood of success cannot reasonably be viewed as having been enhanced by that ruling, entered after considering all of the evidence adduced by each side.

Simply to state the "strong showing" hurdle that District must overleap underscores its lack of success in that regard. Although a defendant's failure on that element is of course not controlling (all of the <u>Hilton</u>-prescribed factors must be considered--see, e.g., <u>Cavel Int'l, Inc. v. Madigan</u>, 500 F.3d 544, 547 (7th Cir. 2007)), it certainly bulks large in the sliding-scale approach (<u>id</u>.) that is called for in considering the several criteria. Indeed, <u>Nken v. Holder</u>, 129 S.Ct. 1749, 1761 (2009) has most recently made it clear that "[t]he first two factors of the fractional standard are the most critical."

This Court will leave it to the prevailing alarm companies to deal with the ultimate merits on appeal--to provide the detailed reasons for affirmance on appeal (including their take on the reasons for denying a stay).[2] But this Court is constrained to comment briefly on one particularly egregious contention advanced by District's counsel.

District's Mem. 4 criticizes the preliminary injunction's

---

[2] This opinion was written promptly after this Court received District's motion and supporting memorandum, in order to be ready for issuance on District's self-scheduled presentment date. Then, immediately before such presentment, the alarm companies weighed in with their memorandum in opposition. Because as explained here District's motion carries its own death warrant, the issuance of this opinion has not been delayed by any effort to incorporate the numerous added flaws in District's position identified in the alarm companies' presentation. Their highly persuasive additional arguments will doubtless be presented to the Court of Appeals when District seeks to pursue its attempt to obtain a stay before that court.

5

declaration that "customers' contracts with the District were null and void and their contracts with their previous alarm monitoring companies were reinstated as though never terminated." That position is extraordinary, given the fact that the so-called termination of the customers' contracts with the alarm companies was the result of District's own totally illegal declaration that those contracts were "null and void." What the injunctive relief has done is simply to restore the status quo that was in place before that unlawful action. District's current bootstrapping effort is reminiscent of nothing more than the proverbial plea by a child who, having killed both parents, asks for judicial mercy because he is an orphan.

To shift now to the second Hilton-prescribed factor, a full consideration of that "irreparable harm" factor confirms that the label better describes the impact on the alarm companies if a stay is granted. Any such grant would continue to bar them from carrying on a legitimate business that they have long pursued--a business in which the equivalent of Newton's first law of motion operates to continue most customer contracts in effect for many years despite the fact that they literally span specific time periods, subject to automatic renewal if no notice of termination has been given effective as of the end of the specified term. That customer goodwill factor was interrupted by District's high-handed "null and void" ukase, and the restoration of the status

quo via the permanent injunction would be thwarted by issuance of a stay.

By contrast, in considering the asserted harm to District from denial of a stay, it must first be observed that any wounds District may suffer in that respect were self-inflicted by its unauthorized entry into the alarm monitoring business. But that aside, the alarm companies have committed themselves to arranging for and cooperating in an orderly transition that will clearly avoid what District's scare tactics describe as "a logistical nightmare." Nothing suggests that the alarm companies will not live up to their commitments for a smooth transition that, it will be remembered, returns the parties to the true status quo--the situation that existed before the dispute was triggered by District's unilateral decision to upset long-standing business relationships.

In sum, any comparative analysis of the harms flowing, or assertedly flowing, from the denial or granting of a stay comes down substantially on the alarm companies' side of that comparison. And when that is coupled with the likelihood-of-success factor discussed earlier, the sliding scale is weighted heavily on the side of denial of a stay.

Lastly, the public interest factor also points against rather than toward the granting of a stay. Once more District is on more than shaky ground in pointing to potential customer anger

7

and confusion as a factor, when any such potential is directly ascribable to the actions taken by District itself.  And District's claimed bugaboo of endangering the health and safety of the alarm monitoring system customers glosses over--or more accurately ignores entirely--the record's silence as to any such risks during the years that the independent alarm companies have been providing their services to consumers within the fire protection district.

Conclusion

This one is really no contest.  Analysis of the criteria for granting a stay of the permanent injunction here, which is concededly not the norm under Rule 62(a)(1), heavily favors the alarm companies.  Accordingly District's motion for a stay of the permanent injunction order is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 23, 2011