IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADT SECURITY SERVICES, INC., )
et al., )
 )
        Plaintiffs, )
 )
    v. ) No. 10 C 4382
 )
LISLE-WOODRIDGE FIRE )
PROTECTION DISTRICT, et al., )
 )
        Defendants. )

**MEMORANDUM**

This action has been returned to the District Court on remand after our Court of Appeals' February 27, 2012 opinion (672 F.3d 492) affirmed in material part and reversed in part the preliminary injunction that this Court had issued against Lisle-Woodridge Fire Protection District ("District") in favor of a number of plaintiffs that provide security systems and related services to consumers within the District's area. After a three-day evidentiary hearing and a great deal of intensive post-remand wrangling, most recently the parties have crossed swords over the issuance of a revised permanent injunction.

For its part, the District urges that no injunctive relief is in order because its recent enactment of a new ordinance to supplant the one that originally triggered this lawsuit has assertedly rendered the controversy between the parties moot. That, however, glosses over -- or, perhaps more accurately, ignores entirely -- two glaring deficiencies in the District's approach to the problem. Those deficiencies have occasioned the writing of this memorandum to provide a backdrop for this Court's rejection of the District's position in favor of the contemporaneous

issuance of a newly-crafted permanent injunction.

One of those flaws in the District's approach lies in its failure to cure the mischief caused by its refusal to restore the status quo that it had disrupted by its original wrongful entry into the business of providing alarm security services -- in substantial part by purporting to render the independent Alarm Companies' contracts with their customers "null and void." Both the Alarm Companies and, more important legally, this Court have sought without real success to focus the District's attention on the actions required to restore the status quo ante bellum -- the situation that existed before the District sowed confusion by its "null and void" pronouncement. On that score the District has dragged its feet, waging what has appeared to be a figurative Stalingrad street-by-street defense -- something difficult to understand on the part of its knowledgeable counsel.

Most recently a partial explanation has emerged: On July 6 the District enacted an ordinance that repealed and superseded the original ordinance that had gone beyond the bounds of its authority and had triggered this lawsuit to begin with, an enactment that suggested the time and efforts of the District and its counsel had been substantially committed to that task rather than to curing the problems it had created. As stated earlier, the District now argues that its action in so doing has mooted the injunctive component of the litigation.

This Court has of course been long familiar with that general mootness doctrine (see, e.g., Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 930 (7th Cir. 2003)).[1] But analysis shows that the principle is inapplicable here because it does not at all fit

---

[1] Parenthetically, the citation of that case in the District's most recent memorandum has jogged this Court's memory -- it was the district judge who was first assigned to the case, and on
(continued...)

the present situation.

Instead what is involved here is a truly different phenomenon. Although all legal analogies are capable of superficial distinction ("This case involves a white horse, not a black horse as in the authority relied on"), in concept the situation posed here is similar to that of a voting law that has enacted registration requirements that have operated to strike African-Americans from the voting lists. Repealing that law does not moot the controversy, for the unconstitutionality as to the voters already disenfranchised by the repealed law continues until the status quo ante bellum has also been restored by the reinstatement of the voting rights that such voters had enjoyed before the law's original enactment. Elimination of the unconstitutional restrictions eliminates the case or controversy as to prospective new voters in the future, but that alone is not enough.[2]

Just so here. This Court has been concerned from the outset as to the need for the consumer public -- those who had contracts in place that have been cast in doubt (a serious understatement) by a welter of conflicting and otherwise confusing pronouncements since this litigation began--to enjoy the benefits of a free competitive market, rather than the monopoly that the District sought to create. Up to now the members of that consumer public -- parties in

---

[1](...continued)
appeal from this Court's final order our Court of Appeals affirmed in part and reversed and remanded in part. Just a few years later the Supreme Court accepted a case from another circuit that presented the same legal problem, and the Supreme Court reached the same result that this Court had earlier espoused.

[2] For that reason -- because the new ordinance does nothing to cure the just-identified problems created by its predecessor and by the District's invalid implementation of that predecessor -- the new permanent injunction also bars enforcement of the new ordinance in its present form.

interest that are not themselves parties litigant -- have not been provided the benefit of their bargains.

That then is a still-alive problem left untouched by the District's oversimplistic argument for mootness. But there is at least one additional and equally compelling reason for the permanent injunction issued contemporaneously with this memorandum, which goes on to discuss that subject.

When this case was first before our Court of Appeals, it operated on the premise that the District's operations conformed to all applicable legal requirements, including the standards promulgated under the National Fire Protection Code ("NFPA 72"), which the Illinois statute governing the District mandates the District to comply with. But importantly, the post-remand evidentiary hearing conducted by this Court demonstrated that was <u>not</u> the case. And that fact strongly justifies the aspects of the new permanent injunction that deal with critical related issues.[3]

Most recently -- just this past week -- this Court has been further flooded with supplemental submissions, one by the District in opposition to the Alarm Companies' Modified Permanent Injunction Order (Amended 7/18), while on their part the Alarm Companies provided their final response to the District's opposition. Those submissions have fortified what has been said in this memorandum and have confirmed the propriety of adopting the meticulously-

---

[3] It will be recalled that the aspect of the District's statutory power as to which the Court of Appeals differed with this Court was such that this Court had no occasion to consider whether the District's arrangements did or did not conform to the applicable legal requirements. With the record on appeal silent on that subject, it was entirely understandable and appropriate for the Court of Appeals to operate on the premise that it did in construing the enabling statute -- but that does not make it so. Nor can it be regarded as law of the case, as contrasted with an issue that was open for consideration on remand.

prepared and comprehensive Modified Permanent Injunction Order (Amended 7/18) in the form

submitted by the Alarm Companies' counsel.[4]

 

 

 

                                                                _____
                                                                Milton I. Shadur
                                                                Senior United States District Judge

Date: August 7, 2012

---

[4] This Court is of course well aware of the need to avoid rubber-stamping proposed submissions by the litigations before it. In this instance, however, this Court has reviewed the Alarm Companies' submission paragraph by paragraph and finds it entirely reliable. In some places cosmetic changes might be made, such as to conform to some of this Court's own idiosyncracies (for example not starting sentences with the articles "A" and "The"), but if such revisions were to be regarded as reasons for a rewrite of a 32-page order, the game would not be worth the candle.