```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

ADT SECURITY SERVICES, INC., )
et al.,                      )
                             )
          Plaintiffs,        )
                             )
     v.                      )    No. 10 C 4382
                             )
LISLE-WOODRIDGE FIRE         )
PROTECTION DISTRICT, et al., )
                             )
          Defendants.        )

## MEMORANDUM OPINION AND ORDER

This Court has plowed its way through the four-inch-thick paper blizzard generated by the competing alarm companies in this action--codefendant Chicago Metropolitan Fire Prevention Company ("Chicago Metro") on one side of the current debate and all the plaintiff alarm companies ("Alarm Companies") on the other--comprising the submissions in support of and in opposition to Chicago Metro's second effort to prevail short of trial. For their part the Alarm Companies have coupled their opposition to Chicago Metro's Fed. R. Civ. P. ("Rule") 56 motion with a cross-motion of their own, and Chicago Metro has responded to that effort.

In brief, Chicago Metro seeks to slice and dice its integral and symbiotic involvement in the initial action by the Lisle-Woodridge Fire Protection District ("District") that declared the existing service contracts to which the Alarm Companies were parties to be "null and void," leaving Chicago Metro as the only

game in town. Essentially Chicago Metro attempts to downplay its inextricable involvement in that effort as though it were a sort of innocent beneficiary of that plan. But this Court initially responded to Chicago Metro's like Rule 56 motion a year ago by a brief ruling that a rational factfinder could reasonably view the situation through a totally different lens, and that remains true today.

Attached to this opinion are pages 2 and 3 of the Alarm Companies' responsive memorandum of law. What is said there by way of summary, amplified in detail in the pages that follow, torpedoes Chicago Metro's self-portrayal as a sort of Jack Horner that put its thumb into the District-conceived plan and--voila!--pulled out the plum of an exclusive arrangement for itself.

Although of course this Court does not now rule in favor of the Alarm Companies as a matter of law, any such ruling is unnecessary to scotch Chicago Metro's effort to obtain such a ruling in <u>its</u> favor. Instead this Court once again determines that a factfinder, instructed as to the relevant criteria under <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961) and its progeny, could reasonably find Chicago Metro to be a "state actor" so as to bring constitutional principles and 42 U.S.C. §1983 into play.

As for the other branch of the Alarm Companies' claim

against Chicago Metro, a claim based on potential antitrust liability, any possible "state action immunity" defense to defeat such a claim likewise calls for a factual--not a legal--resolution (see Alarm Companies' Mem. 10-12). And Chicago Metro's effort to call the Noerr-Pennington doctrine to its aid simply doesn't fit the contested facts here.

On the other side of the coin, however, the Alarm Companies' cross-motion under Rule 56 is puzzling. Like Chicago Metro, the Alarm Companies have not demonstrated their entitlement to a favorable ruling as a matter of law.

## Conclusion

In summary, Chicago Metro's Rule 56 motion (Dkt. 230) and the Alarm Companies' cross-motion (Dkt. 307) are denied. This action is set for a status hearing at 8:45 a.m. September 13, 2012 to discuss what if any further proceedings should take place at this District Court level in light of the currently pending interlocutory appeals.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 28, 2012

~~summary judgment revives these same two basic assertions without offering any new facts or legal arguments. Dkt. 231 at 1-3.~~

On the other hand, discovery undertaken by the Alarm Companies has revealed many new facts that demonstrate Chicago Metro's active participation in, and even direction of, the District's interference with Customer Contracts and engagement of an illegal monopoly. These undisputed facts demonstrate that Chicago Metro was actively involved in: (1) the District's investigation of a wireless network; (2) the means for obtaining the District ownership of the network and generating revenue; and (3) the method for implementation that anticipated terminating Customer Contracts. In spite of a purported open bidding process, the District effectively gave Chicago Metro the exclusive opportunity to conceive the network, plan its implementation before the bid award, and become the successful bidder.

From June 29, 2009, when Bureau Chief French advised Fire Chief Freeman that Chicago Metro had been "selected" to be the provider and installer of the equipment for the network, Chicago Metro occupied a position in the process that belied any notion of an open and fair bidding process. Chicago Metro's actions, both before and after the passage of the Ordinance, made it the indispensible prime mover behind a pact with the District to seize the Alarm Companies' customers and monopolize the Business.[1]

By proposing, facilitating, and implementing the plan approved in the Ordinance, Chicago Metro enabled the District to enter into and monopolize a private marketplace as a commercial participant (one in which it had no authority to enter) and to render the Alarm Companies' Customer Contracts "null and void." Material facts omitted from Chicago Metro's

---

[1] All capitalized terms have the same meaning as used in the Permanent Injunction Order and past memoranda.

-2-

submittal establish the uncontested factual basis for a determination that Chicago Metro was not a mere bidder in the District's RFP process or simply petitioning the District for a favorable decision. On the contrary, Chicago Metro and the District shared a special relationship that allowed the District to mandate a wireless network and expect 100% participation from the Commercial Accounts. These facts are set forth in full in the Alarm Companies' Supplemental Statement of Additional Facts, which is incorporated herein as though fully set forth. The following summarizes the most relevant facts.

## II. STATEMENT OF ADDITIONAL FACTS

### A. The Irregular Bidding Process

When the District sought a Request for Proposals ("RFP"), the District did not prepare any writing explaining the scope and requirements for a proposed wireless network. S.R. 15.[2] Chicago Metro acknowledged this was an "unusual procedure." *Id.* ADS concurred in this assessment. *Id.* Six alarm companies were solicited for bids. S.R. 22. Three companies that proposed to retain ownership of the network were rejected, despite the fact they submitted what the District termed "qualified proposals" using AES or Keltron wireless networks. S.R. 18, 22. ADT was rejected for submitting a questionnaire seeking to determine the scope of the bid. S.R. 17. Both Chicago Metro and a competitor, Fox Valley Fire Protection ("Fox Valley"), were deemed "qualified" even though neither had submitted a proposal. S.R. 22. On June 19, 2009, Chicago Metro submitted a proposal with two options: (1) a wireless system owned by Chicago Metro and monitored by a third party central station; and (2) a wireless system owned by the District. S.R. 24. Although no bid was awarded until September, 2009, Bureau Chief French

---

[2] References to the Supplemental Statement of Uncontested Facts are labeled "S.R." "R" refers to Chicago Metro's Statement of Undisputed Material Facts.