IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADT SECURITY SERVICES, INC., )
et al.,                      )
                             )
         Plaintiffs,         )
                             )
    v.                       )  No. 10 C 4382
                             )
LISLE-WOODRIDGE FIRE         )
PROTECTION DISTRICT, et al., )
                             )
         Defendants.         )

## MEMORANDUM OPINION AND ORDER

More than 2-1/2 years after this action was instituted and almost exactly a year after it has survived (albeit with some limitations) at the appellate level (672 F.3d 492 (7th Cir. 2012, cited for convenience as simply "ADT, 672 F.3d at –"), codefendant Chicago Metropolitan Fire Prevention Company ("Chicago Metro") has come forward with a motion to dismiss Counts II, III and V of the Supplemental Complaint here--a motion whose substance, if sound, should have been presented earlier in the case. Little wonder, then, that the plaintiff Alarm Companies'[1] responsive memorandum begins its "Introduction" section with this sentence:

> While in the abstract a party may test the sufficiency of the pleadings at any time during a case, this does not mean that Chicago Metro is entitled to submit such motion almost two and one-half years after the case was filed to first test the pleadings as if this case were a tabula rasa.

---

[1] For convenience that collective term is employed here to designate all of the plaintiffs.

What Chicago Metro's counsel have obviously forgotten (or more likely have never learned) is the truth expounded so lucidly a full two decades ago in then Judge (now Chief Judge) Frank Easterbrook's opinion for our Court of Appeals in N.A.A.C.P. v. Am. Family Mut. Ins. Co., 678 F.2d 287, 292 (7th Cir. 1992): that the federal pleading system deals in claims, not in the state law concept of "causes of action." In the state law system the congeries of facts that entitle a plaintiff to relief (thus on their own stating a "claim" in the federal sense) must be linked to a particular theory of recovery (with the combination thus constituting a "cause of action" in the state court sense).

Because among too many federal practitioners that latter approach shows no signs of disappearing, this Court--which has tried without success to eradicate those weeds that tend to choke out the garden of proper federal pleading--will try once again by quoting liberally from Judge Easterbrook's teaching at the page cited earlier (most citations omitted):

> Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of "claim for relief" in the federal rules. Putting each legal theory in a separate count is a throwback to code pleading, perhaps all the way back to the forms of action; in both, legal theory and facts together created a "cause of action." The Rules of Civil Procedure divorced factual from legal aspects of the claim and replaced "cause of action" with "claim for relief" to signify the difference. Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A complaint should limn the grievance and demand relief. It need not identify the law on which the claim rests,

> and different legal theories therefore do not multiply
> the number of claims for relief.
>
> One set of facts producing one injury creates one claim
> for relief, no matter how many laws the deeds violate.

Indeed, Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992), decided on the very same day as N.A.A.C.P. but by a different panel, made the point even more poignantly:

> In Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078
> (7th Cir. 1992), this court emphasized that a complaint
> need not point to the appropriate statute or law in
> order to raise a claim for relief under Rule 8 of the
> Federal Rules of Civil Procedure. And, we held that a
> complaint sufficiently raises a claim even if it points
> to no legal theory or even if it points to the wrong
> legal theory as a basis for that claim, as long as
> "relief is possible under any set of facts that could
> be established consistent with the allegations."

It must be said, however, that all the fault is not to be placed solely at the doorstep of Chicago Metro's counsel and the numerous other defense counsel in other federal cases who are similarly guilty of importing state court practice and principles into their federal practice. After all, plaintiffs' lawyers (no doubt equally steeped in Illinois state court practice) set the stage here by splitting a single claim into separate counts, even though the only place that the Federal Rules of Civil Procedure ("Rules") use the word "count" is in the last sentence of Rule 10(b)(emphasis added):

> If doing so would promote clarity, <u>each claim founded
> on a separate transaction or occurrence</u>--and each
> defense other than a denial--<u>must be stated in a
> separate count</u> or defense.

3

Now then to Chicago Metro's motion. It is easiest to begin with its unfounded attack on Counts III and V, counts that advance charges labeled there as "monopolization, attempt to monopolize and conspiracy to monopolize" (Count III) and "attempted monopolization" (Count V).

On that score it is difficult indeed to understand what amounts to Chicago Metro's third effort, short of trial, to get out from under its ultimate burden to prevail on those antitrust issues. Less than six months ago (on August 28, 2012) this Court issued its memorandum opinion and order that scotched Chicago Metro's effort to obtain a summary judgment ruling in that respect, employing language that could well have been written for (or might be said to apply a fortiori to) the current motion:

> In brief, Chicago Metro seeks to slice and dice its integral and symbiotic involvement in the initial action by the Lisle-Woodridge Fire Protection District ("District") that declared the existing service contracts to which the Alarm Companies were parties to be "null and void," leaving Chicago Metro as the only game in town. Essentially Chicago Metro attempts to downplay its inextricable involvement in that effort as though it were a sort of innocent beneficiary of that plan. But this Court initially responded to Chicago Metro's like Rule 56 motion a year ago by a brief ruling that a rational factfinder could reasonably view the situation through a totally different lens, and that remains true today.
>
> Attached to this opinion are pages 2 and 3 of the Alarm Companies' responsive memorandum of law. What is said there by way of summary, amplified in detail in the pages that follow, torpedoes Chicago Metro's self-portrayal as a sort of Jack Horner that put its thumb into the District-conceived plan and--voila!--pulled out the plum of an exclusive arrangement for itself.

4

In sum, it is not just the District that must face up to charges of the type embodied in Counts III and V--it is the task of Chicago Metro as well. Simply put, that is so because the tandem interaction between the District and Chicago Metro renders both of them potentially liable on several variants of monopolization and attempted monopolization concepts.[2]

As for Count II, the Alarm Companies' response points out not only that Chicago Metro is seeking to thresh old straw but also that it ignores our Court of Appeals' confirmation that the District had no authority to enter into the Alarm Companies' business (ADT, 672 F.3d at 503) and thereby to vest its cohort Chicago Metro with monopoly status in that regard. It is plain that cutting the Alarm Companies off at the pass by trashing its efforts to invoke the Fourteenth Amendment against state actor District and possible state actor Chicago Metro is inappropriate at the threshold pleading stage. That aspect of Chicago Metro's motion is denied as well.

## Conclusion

Chicago Metro's counsel simply refuse to face up to the need to resolve this major dispute through trial, not (as attempted before) through summary judgment paper efforts nor (as now)

---

[2] Just as the August 28 opinion attached portions of the Alarm Companies' memorandum in support of that conclusion, their current Response at 10-12 provides chapter and verse for current purposes.

through papers attacking the pleadings.  Its motion is denied in its entirety, and it is ordered to answer the entire Supplemental Complaint on or before February 28, 2013.

                        _____
                        Milton I. Shadur
                        United States District Judge

Date:  February 7, 2013