**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ADT SECURITY SERVICES, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 10 C 4382 ) |
| LISLE-WOODRIDGE FIRE PROTECTION DISTRICT, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

After more than 3-1/2 years of litigation and two trips to our Court of Appeals (672 F. 3d 492 (7th Cir. 2012) and 724 F. 3d 854 (7th Cir. 2013), respectively cited for convenience as "ADT I, 672 F. 3d at --" and "ADT II, 724 F. 3d at --"), the parties now cross swords over several affirmative defenses ("ADs") advanced by codefendants Lisle-Woodridge Fire Protection District ("District") and Chicago Metropolitan Fire Prevention Company ("Chicago Metro"), as well as codefendants' requests for attorney's fees and their renewed demand for a jury. Plaintiff alarm companies (collectively "Alarm Companies") brought these matters to this Court's attention via a motion to strike pursuant to Fed. R. Civ. P. ("Rule") 12(f)(2).

Codefendants respond that Alarm Companies' motion is untimely and emphasize that such motions are generally disfavored, but neither argument is persuasive. True enough, Alarm Companies filed their motion well after Rule 12(f)(2)'s 21-day window period had run out. But Rule 12(f)(1) permits this Court to act on its own at any time to strike insufficient defenses, and Williams v. Jader Fuel Co., 944 F. 2d 1388, 1399 (7th Cir. 1991) teaches that "Courts have read

Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion."

Nor does the fact that motions to strike ADs often prove to be wasteful digressions from the substance of the litigation mean that this Court should not evaluate the sufficiency of the ADs here -- particularly where many of those ADs are themselves mere digressions. As <u>Heller Fin., Inc. v. Midwhey Powder Co.</u>, 883 F. 2d 1286, 1294 (7th Cir. 1989) put it:

> Midwhey places great reliance on the general rule that motions to strike are disfavored. This is because motions to strike potentially serve only to delay. See <u>United States v. 416.81 Acres of Land</u>, 514 F. 2d 627, 631 (7th Cir. 1975) (Clark, J.). But where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay. Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings. <u>Id</u>. at 631. Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact. <u>Id</u>. Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure. <u>Bobbitt v. Victorian House, Inc.</u>, 532 F. Supp. 734, 736–37 (N.D. Ill. 1982). Thus, defenses must set forth a "short and plain statement," Fed. R. Civ. P. 8(a), of the defense. <u>Bobbitt</u>, 532 F. Supp. at 737.

Accordingly this Court will attempt to streamline this litigation by striking some of District's and Chicago Metro's unnecessary or misconceived ADs. This memorandum opinion and order will first tackle District's ADs while addressing Chicago Metro's defenses that overlap with District's along the way. Next it will address Chicago Metro's remaining ADs before turning to the issues of trial by jury and attorney's fees.

<u>District's ADs</u>

District and Chicago Metro both advance several ADs in common -- unclean hands, estoppel and waiver -- based on the assertion that Alarm Companies participate in arrangements

in other fire protection districts that are similar to the arrangement between District and Chicago Metro that they now challenge. Those arguments essentially boil down to an accusation of hypocrisy -- that Alarm Companies are using this litigation to challenge conduct parallel to their own activities elsewhere. Even if this Court were to accept that Alarm Companies' arrangements with other fire protection districts mirror the arrangement between Chicago Metro and District -- a contention about which this Court has expressed serious doubts in the past -- those defenses must still be rejected because alleged misconduct <u>elsewhere</u> cannot form a basis for unclean hands, waiver or estoppel ADs in <u>this</u> litigation.

"Unclean hands" notions seek to "prevent[ ] a wrongdoer from enjoying the fruits of his transgression" <u>Precision Instruments Mfg. Co. v. Auto. Maintenance Mach. Co.</u>, 324 U.S. 806, 815 (1945)). While <u>Packers Trading Co. v. CFTC</u>, 972 F. 2d 144, 148-49 (7th Cir. 1992) gives this Court broad "discretion in refusing to aid the unclean litigant," a litigant's bad faith applies only where it is "relative to the matter in which he seeks relief" (<u>id</u>., quoting <u>Precision Instruments</u>, 324 U.S. at 814). <u>Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.</u>, 780 F. 2d 589, 601 (7th Cir. 1986) prescribes that the unclean hands doctrine "is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." Here the "fruit" that Alarm Companies seek to harvest is the benefit of their preexisting contractual relationships in the District -- relationships that are wholly unrelated to their alleged arrangements with other fire protection districts.

Chicago Metro also bases its unclean hands, waiver and estoppel defenses on the fact that two of the plaintiff Alarm Companies -- ADS and ADT -- submitted bids competing with Chicago Metro's own (ultimately successful) proposal to supply District with a municipal fire

alarm network. Chicago Metro contends that those proposals constitute an attempt to enter into and profit from the same type of arrangement that Alarm Companies now say is unlawful, and that the doctrines of unclean hands, estoppel and waiver should block parties from challenging the legality of actions that they have attempted themselves.

That issue need not be resolved as a pleading matter, because the record does not show (and Chicago Metro has not argued) that <u>all</u> of the plaintiff Alarm Companies submitted proposals to District. Unclean hands, waiver and estoppel may, where appropriate, be invoked against plaintiffs based only on their <u>own</u> conduct, not the conduct of other parties to the litigation.

In sum, Chicago Metro's arguments, like those broached by District, fail -- though in part on different grounds. Accordingly District's ADs 1 and 2 and Chicago Metro's ADs 5 and 6 are stricken.

District's ADs 3 and 4 relate only to an ordinance adopted in 2007 ("Prior Ordinance"). Because Alarm Companies are no longer pursing any claims based on the Prior Ordinance, those ADs are stricken as moot.

District's AD 5 asserts broadly that Alarm Companies' tortious interference claims must fail because District is privileged to take actions that it deems necessary to protect people and property in accordance with its duties under the Illinois Fire Protection District Act. While the Illinois Supreme Court recognizes a privilege for government actors who interfere with contractual relationships in the course of exercising their statutory discretion (as long as the plaintiff does not prove that there was a malicious motive behind the government action), that privilege does not extend to "using illegal means to induce a breach of contract" (<u>HPI Health</u>

Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill. 2d 145, 159, 545 N.E.2d 672, 678 (1989).[1] It will be recalled that District's effort, scotched by this Court, to establish a monopoly for itself over fire alarm transmitters was launched by its high-handed pronouncement that Alarm Companies' existing contracts with its customers were "null and void" -- and ADT I, 672 F. 3d at 503 expressly held that "[n]either the NFPA code nor the [Illinois Fire Protection] Act even tacitly endorses so drastic a policy change as the establishment of a large governmental monopoly over fire alarm transmitter devices." Because District exceeded its legal authority by its effort to displace Alarm Companies' firm contractual relationships, it can claim no privilege for those actions, and so its AD 5 to that effect is also stricken.

Several of District's other defenses are prime examples of an all-too common misuse of ADs to deny elements of or allegations in a plaintiff's complaint. This Court has long tried to correct that frequently encountered mistake -- see App'x ¶ 5 to State Farm Mut. Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 279 (N.D. Ill. 2001) -- by stressing that an appropriate AD is one that accepts the allegations of the complaint as gospel, then provides other reasons why the defendant is not fully liable. District's ADs 6, 7, 8 and 12 are really just attacks on various allegations in Alarm Companies' complaint, redundant of District's denials of those allegations in its Answer.[2]

---

[1] There the Illinois Supreme Court relied on Prudential Ins. Co. v. Van Matre, 158 Ill. App. 3d 298, 306, 511 N.E.2d 740, 745 (5th Dist. 1987), which held that "conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper," quoting from the Restatement (Second) of Torts § 767, cmt. c at 31.

[2] This footnote probably should have been inserted earlier in this opinion, although what has just been said in the text also makes its placement here appropriate. This Court has often wondered whether lawyers realize how their advancement of such unfocused, scattershot and boilerplate ADs impacts on their credibility with the judicial recipient who is "favored" with those submissions.

Hence this Court also strikes those ADs as adding nothing to this litigation.

Only two more District ADs remain for brief comment. First, because Alarm Companies do not request monetary damages from District, conceding that the Local Government Antitrust Act, 15 U.S.C. §35(a) ("LGAA") prevents such relief, District's AD 9 is stricken as moot. And finally, in light of the holding in ADT II, 724 F. 3d at 863-66 that District's implementation of a new Ordinance in 2012 ("New Ordinance") does not moot Alarm Companies' claims for injunctive relief, District's AD 13 is stricken.

## Chicago Metro's ADs

Chicago Metro's AD 1 -- that Alarm Companies do not have standing because they "are not directly injured" by the New Ordinance (C.M. Ans. 42) -- is absurd on its face. Alarm Companies respond correctly that standing is a jurisdictional issue rather than an AD, so that Chicago Metro's standing "defense" may be stricken on that basis alone. More to the point, it strains credulity to suggest seriously that Alarm Companies -- after successfully obtaining preliminary and permanent injunctive relief over multiple years of litigation -- lack standing because they have suffered no direct injury.

When defendants first advanced that argument back in 2010, this Court described it as "bizarre" because District not only recognized that Alarm Companies had contractual rights but sought to torpedo those rights by sending out notices saying the contracts were "null and void." Chicago Metro's argument that the New Ordinance somehow justifies reopening the issue of standing is a non-starter, especially in light of the finding of ADT II, 724 F. 3d at at 864 that "the new ordinance keeps several requirements from the original ordinance that would continue to injure the alarm companies." Chicago Metro's AD 1 is stricken.

Chicago Metro's AD 2 asserts that it too is entitled to take advantage of District's immunity from monetary damages under LGAA. As this Court has articulated more than once -- when denying both Chicago Metro's ill-fated summary judgment motion on August 28, 2012 and its motion to dismiss on February 8, 2013 -- whether Chicago Metro may take advantage of LGAA or other "state action immunity" defenses involves making factual determinations about the nature of its relationship with District. Accordingly it would be inappropriate to strike Chicago Metro's AD 2 for now, and this Court does not do so.

Chicago Metro's AD 3, which asserts a <u>Noerr-Pennington</u> defense, is just a new effort to downplay its integral involvement with District's anticompetitive conduct. <u>Noerr-Pennington</u> shields private actors from antitrust damages caused by certain lobbying activities, and Chicago Metro tries to wrap itself in that mantle by asserting in its AD ¶ 14 that Alarm Companies' claims are based on "Chicago Metro's efforts to lobby or petition the District."

That mischaracterization of Chicago Metro's conduct as mere "lobbying" cannot withstand scrutiny, for Alarm Companies' complaint alleges not just that Chicago Metro petitioned District to engage in antitrust violations, but rather that it worked in tandem with District every step of the way. Because Chicago Metro stands accused of conduct that goes well beyond the protection of <u>Noerr-Pennington</u>, its attempt to call that doctrine to its aid must fail, and its AD 3 is stricken.

Chicago Metro styles its AD 4 as charging a "conspiracy in restraint of trade," an argument almost as confusing as it is without merit. It asserts that Alarm Companies have violated the Sherman Act by conspiring to maintain a stranglehold over the fire alarm monitoring business in the Chicago metropolitan area, and that they are pursing this lawsuit as a means of

protecting their illegal monopoly. Such charges provide no legal basis for an AD, except possibly as a recasting of the unclean hands defense disposed of earlier in this opinion.

In attempted support for its position Chicago Metro cites only to <u>Cal. Motor Transp. Co. v. Trucking Unlimited</u>, 404 U.S. 508 (1972), but that case deals with an exception to the <u>Noerr-Pennington</u> doctrine -- and indeed it does so in a manner that tends to support Alarm Companies' position on that score rather than Chicago Metro's. And to return to AD 4, if Chicago Metro's contention is intended as some sort of a mislabeled counterclaim for violations of the Sherman Act or abuse of process, it has totally failed to plead sufficient facts with the "plausibility" demanded by the <u>Twombly-Iqbal</u> duo to put Alarm Companies (or this Court) on notice as to the nature of its claim. This Court therefore strikes Chicago Metro's AD 4 as well.

<u>District and Chicago Metro's Request for Trial by Jury</u>

As for District's and Chicago Metro's attempted resuscitation of their already years-late demand for a trial by jury, they are once again trying to use the passage of the New Ordinance in 2012 to get a second bite at the figurative apple. That attempt fails because the New Ordinance does not raise any new factual issues that justify a renewed demand for a jury. On that score Alarm Companies' latest complaint does not allege that New Ordinance raises any such new issues it rather asserts that the New Ordinance represents a continuation of the conduct about which Alarm Companies' have complained since the outset of this litigation.

Nor are Alarm Companies alone in that respect: <u>ADT II</u>, 724 F. 3d at 864-65 also highlights many of the ways in which the New Ordinance mirrors the original Ordinance and perpetuates the same injuries -- as our Court of Appeals summarizes (<u>id</u>. at 864):

But the new ordinance keeps several requirements from the original ordinance that

would continue to injure the alarm companies by effectively blocking them from monitoring in the district or that are beyond the District's authority to impose.

It is irrelevant that Alarm Companies have requested additional discovery related to the New Ordinance, for disputes over particular facts that arise during the course of litigation do not in themselves represent new factual issues that justify a renewed jury demand (Communc'ns Maintenance, Inc. v. Motorola, Inc., 761 F. 2d 1202, 1208 (7th Cir. 1985)). Indeed, what this Court said in its February 22, 2012 opinion when it disposed of defendants' last request for a jury applies with equal force here:

> In this instance no such deflection of the issue as that urged by defendants can alter the basic fact that knowledgeable and experienced counsel for each defendant made a judgment at the outset of this litigation that the resolution of the case, with its complex issues, was best left to this Court and not a jury. What has taken place since then to support defendants' attempt at second guessing that judgment? In candor, what defense counsel now attempt smacks strongly of a variation on the most conventional type of forum shopping -- this time because defendants or their counsel may feel that they have not fared well under this Court's legal rulings up to this point in the litigation. But this Court will not cater to that attempt -- it has of course called its shots as it sees them, without the exercise of favor toward one side or another, and it (again of course) plans to do exactly the same from here on out.

In short, District's and Chicago Metro's renewed request for trial by jury -- still redolent of forum shopping -- is denied.

## Attorney's Fees

Finally, as to Alarm Companies' motion to strike District's and Chicago Metro's requests for attorney's fees, it is of course well established that such award in a defendant's favor are not easy to come by (see, e.g., King v. Ill. State Bd. of Elections, 410 F. 3d 404, 416 (7th Cir. 2005)). But defendants cite King in their objection to Alarm Companies' motion to strike, for that case applied an exception to that general rule. In any event, it is premature to decide at this stage of

the litigation whether an award of such fees in defendants' favor may or may not prove appropriate. So the motion to strike is denied for now, and there will be ample opportunity for the parties to clash over the propriety of fee awards as the substantive issues of the case are resolved.

<u>Conclusion</u>

Alarm Companies' motion under Rule 12(f)(2) to strike defendants' ADs is denied as untimely. But in an exercise of its discretion under Rule 12(f)(1), this Court strikes District's ADs 1 through 9, 12 and 13 and Chicago Metro's ADs 1 and 3 through 6. District's and Chicago Metro's request for a trial by jury is denied. Finally, Alarm Companies' motion to strike defendants' request for attorney's fees is denied without prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: February 4, 2014