IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADT SECURITY SERVICES, INC., a Delaware corporation; ALARM DETECTION SYSTEMS, INC., an Illinois corporation; D.M.C. SECURITY SERVICES, INC., an Illinois corporation; ILLINOIS ALARM SERVICES, INC., an Illinois corporation; and SMG SECURITY SYSTEMS, INC., an Illinois corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> LISLE-WOODRIDGE FIRE DISTRICT, and CHICAGO METROPOLITAN FIRE PREVENTION COMPANY, an Illinois corporation, <br><br> Defendants. | Case No.: 10-cv-04382 <br><br> Judge: Honorable Milton I. Shadur <br><br> Magistrate Judge: Honorable Jeffrey Cole |

### ALARM COMPANIES' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

This Court's July 29, 2014 Judgment Order required the parties to confer and exchange information in anticipation of Alarm Companies' motion for fees (Dkt. 563). Alarm Companies attempted to engage Defendants in the LR 54.3 process by providing 1500 pages of documentation of their fees and costs, but this effort was unreciprocated. Defendants have avoided supplying their own fee information,[1] instead asserting in various contexts that Alarm

---

[1] Alarm Companies asked Defendants to simply provide the gross dollars expended, as a means of avoiding the wait for redacted billing records. Such information would put Alarm Companies fee request in context.

Companies have not prevailed in this litigation. Although some of the relevant case law is contained in Alarm Companies' Motion (Dkt. 567), the latest response from Defendants (Dkt. 569) requires further explication.

Defendants' positions, although often contradictory, are set out in various letters attached to their response (*Id.*) or separately transmitted to ADS. Such rejoinders have run the gamut from Defendants stating that "[o]f course, my client is not taking the position that a fee award is not warranted in this case" (September 16, 2014 Letter, Dkt. 569, Exh. C) to asserting that "further investigation" revealed that Alarm Companies "are not entitled to fees." (September 30, 2014 Letter, Dkt. 569, Exh. B). To justify this latter position, Defendants treat the results of Alarm Companies' efforts as somehow *de minimus* by asserting that from Defendants' perspective, Alarm Companies have only succeeded in winning under the District Act and obtaining a small amount of money. This myopic viewpoint ignores the three injunctions, partial summary judgment, two appeals and numerous other rulings in Alarm Companies' favor.

Defendants have also asserted that this is a "catalyst" case, as if the mere filing of this case, and not four years of unsuccessful litigation (from Defendants' perspective), caused the Defendants to change their practices. This Court has already rejected the catalyst argument. Finally, Defendants claim the fees are unreasonable without citing to any substantive basis for this assertion.

## I. ALARM COMPANIES ARE PREVAILING PARTIES.

Defendants' attempts to trivialize the results of this litigation demonstrate a complete lack of understanding of the U.S. Supreme Court's decision providing that a prevailing party is one that "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Seventh

LISLE\159198.7
ID\KBM - 089112\0034

Circuit twice affirmed the entry of permanent injunctions, including the Modified Permanent Injunction (hereinafter, "Order") with only minor modifications. *ADT I and II.*[2]

Defendants also voluntarily paid Alarm Companies more money than Alarm Companies sought in actual damages for their federal constitutional and antitrust claims, including treble damages available under the Clayton Act. (*See* Dkt. 563).[3] By Defendants' own characterization of the results and the mooting of the case (*Id.*), Defendants concede that Alarm Companies obtained all the relief to which they were entitled.

The Order alone supports a determination that Alarm Companies are prevailing parties. The U.S. Supreme Court recently stressed that it has "repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party] test." *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012). The test is whether there has been a material alteration in the legal relationship between the parties which directly benefits the plaintiff (*id*), and the focus is on the procedural posture of the case. *See Bd. of Educ. v. Walker*, 800 F. Supp. 2d 917, 924 (N.D. Ill. 2011).[4]

As a result of the injunctions entered in favor of Alarm Companies, Defendants stopped their take-over of Commercial Accounts; returned their Commercial Accounts to private alarm contractors; and re-opened the Lisle-Woodridge market to competition. These changes directly benefited Alarm Companies by restoring their relationships and goodwill with customers in Lisle-Woodridge. Defendants' recent voluntary payment to Alarm Companies to moot the case

---

[2] For ease of reference, *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492 (7th Cir. 2012) will be referred to as "*ADT I*" and *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 724 F.3d 854 (7th Cir. 2013) will be referred to as "*ADT II.*"

[3] It is worth noting the two of the Alarm Companies achieved complete relief from the entry of the three injunctions, as they were able to avoid losing any Commercial Accounts.

[4] The entry of a preliminary injunction plus a defendant's change in policy justified an award of fees. *See Consol. Paving, Inc. v. County of Peoria*, 2013 U.S. Dist. LEXIS 32113 (C.D. Ill.Mar. 7, 2013).

3

LISLE\159198.7
ID\KBM - 089112\0034

did not change Alarm Companies' status as prevailing parties. *See Young v. City of Chicago*, 202 F.3d 1000, 1000-1001 (7th Cir. 2000). Just the opposite—the tender was only sufficient because it made Alarm Companies whole. *See Gates v. City of Chicago*, 623 F.3d 389, 394, 413 (7th Cir. 2010).

To avoid the natural consequence of their complete defeat in this litigation, Defendants turn to the catalyst theory for refuge (September 30, 2014 Letter, Dkt. 569, Exh. B). In *Walker v. Calumet City*, 565 F.3d 1031 (7th Cir. 2009), the district court did not render any judgment on the merits of plaintiff's claims. *Id.* at 1034. Rather, the lawsuit was mooted because the City voluntarily stopped the allegedly wrongful conduct. *Id.* at 1035. Here, the filing of the lawsuit did not result in voluntary compliance. Multiple judgments and orders did not even stop Defendants from trying to hide behind the Second Ordinance to avoid compliance with the Order. *See e.g., ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prevention Dist.*, 799 F. Supp. 2d 880, 888 (N.D. Ill. 2011) (holding that Alarm Companies "plainly succeeded on the merits"); *see also United States v. City of Chicago*, 1981 U.S. App. LEXIS 13500 (7th Cir. 1981) (stating that entry of a permanent injunction is a determination of the merits); *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003) (explaining that a plaintiff who receives any judgment is prevailing).

In *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001), the Supreme Court rejected the catalyst theory because "[a] defendant's voluntary change in conduct...lacks the necessary judicial imprimatur on the change." The facts and procedure there are the polar opposite of what happened here. There was nothing "voluntary" about Defendants' change in conduct; indeed, the Seventh Circuit approved of this Court's entry of the Order as a "strong measure[]" that was fully justified in light of Defendants' "recalcitrance throughout the litigation." *ADT II* at 876.

4

Defendants also incorrectly characterize the rulings in this case as only about the District Act, ignoring the Conclusions of Law in the Order (*see* Dkt. 391, pp. 27-28, ¶¶ 9, 18) and rulings by this Court and the Seventh Circuit, all of which showed that the reach of this case extended well beyond simply violations of the District Act. Indeed, the tendering of the monies for treble damages constitutes an admission of liability under the federal counts (the only claims as to which treble damages are available). Defendants' payment was made voluntarily, without condition, and outside of the context of either settlement or FRCP 68. *See Gates*, 623 F.3d at 413; *Gaslite Illinois, Inc. v. Northern Illinois Gas Co.*, 46 Ill. App. 3d 917, 925-926 (Ill. App. Ct. 2d Dist. 1977); FRE 408.

The Supreme Court found that attorneys' fees were proper where a plaintiff prevailed on a statutory claim pendent to a constitutional claim, even if fees were not available under the statutory claim. *Maher v. Gagne*, 448 U.S. 122, 132-33 (1980). In *Maher*, defendant attempted to bar attorneys' fees by characterizing the case as only involving a Social Security Act violation. *Id.* at 128. The Supreme Court rejected this argument and explained that such a result would be counter to Congress's intent in providing for fees in Section 1988. The Supreme Court quoted the legislative history, which provided that attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on a constitutional claim, if that claim is substantial and the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *Id.* at n. 15; *see also Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 277 (1st Cir. 2000) (holding that when state-law and § 1983 claims are inextricably intertwined, a plaintiff who prevails only on the state-law claim may still receive attorneys' fees under § 1988).

The Supreme Court also stressed that "[n]othing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination

5

that the plaintiff's rights have been violated." *Maher*, 448 U.S. at 129. Therefore there is no bar to an award of attorneys' fees to Alarm Companies. All their claims were interrelated, substantial, and arose out of a common nucleus of operative fact. This was evidenced by the rulings that Defendants' actions were arbitrary, anticompetitive and aimed at establishing an illegal governmental monopoly. (Dkt. 391, at 9, 27; *ADT I*, at 495, 503-04; *ADT II*, at 857, 860, 865, 876).

## II.  THE LODESTAR IS A REASONABLE AMOUNT OF ATTORNEYS' FEES.

Typically, the Lodestar figure determines a proper award of fees, by multiplying the reasonable number of hours by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. There is a strong presumption that the Lodestar is a reasonable amount of attorneys' fees. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 655 (7th Cir. 2011). Further, the fact that Alarm Companies paid the full amount of attorneys' fees is the best evidence that the fees were reasonable. *See Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008).

Defendants' only attack on the reasonableness of fees is the claim that only two attorneys had prior antitrust experience such that any other attorney working on the case was engaged in a learning experience. (Dkt. 569 at 2). Staffing a matter with both experienced and less experienced attorneys is common practice and allows a more fluid and efficient distribution of work. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). Experience level may help determine the market rate, but the use of younger lawyers does not make their work lack value. *See id.* at 659. This case involved a litany of issues involving not only antitrust law, but also constitutional law and construction of the District Act. Many of these issues were matters of first impression. Staffing the case with attorneys having experience in all subject

LISLE\159198.7
ID\KBM - 089112\0034

areas would have been impossible, which also made it necessary to involve certain attorneys with extensive antitrust experience, for example.

### III. THE *HENSLEY* FACTORS DEMOSTRATE THAT ALARM COMPANIES' FEES ARE REASONABLE.

The most important of the discretionary *Hensley* factors is the "results obtained." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Alarm Companies obtained excellent results in this case. Alarm Companies were attacking a local governmental monopoly, conduct that is rarely challenged (at least in reported cases). Yet, Alarm Companies obtained all the relief they requested. *See Hensley*, 461 U.S. at 436 (stating that the reasonableness of time spent is measured in relation to the success achieved); *see also Golden v. World Sec. Agency*, Inc., 2014 U.S. Dist. LEXIS 712, *27 (N.D. Ill. Jan. 6, 2014) (measuring plaintiff's success by comparing the results obtained from the lawsuit with the relief plaintiff sought). The fact that Defendants appealed twice to the Seventh Circuit, unsuccessfully, further underscores that the results obtained by Alarm Companies were significant.

Other *Hensley* factors show that Alarm Companies' fees were reasonable, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; and (3) the skill requisite to perform the legal service properly. *Hensley*, 461 U.S. at 430 n. 3. Significant time and labor were required because of the complexity and novelty of the issues in the case, but also because of District's and Chicago Metro's unrelenting and baseless defenses, which they raised even after the Seventh Circuit affirmed the Order. The more than four years of active litigation and expenditure of over $2 Million in attorneys' fees by Alarm Companies would not have been necessary if Defendants had ceased their unlawful conduct after the entry of the first injunction. As the Seventh Circuit stated, the underlying theme of the case was "balancing a municipal entity's legitimate regulatory authority while protecting the market from unlawful monopolistic

7

activity." *ADT II* at 876. In light of this, it was no small task for Alarm Companies to secure the results they did.

Defendants, by contrast, have not pointed to any *Hensley* factor that would support a reduction of attorneys' fees. Instead, Defendants engaged in a game of claim-splitting that both the Supreme Court and Seventh Circuit have rejected. *Hensley*, 461 U.S. at 435 and n. 11; *Jaffee*, 142 F.3d at 414.[5] As a result, Defendants cannot avoid attorneys' fees by complaining that Alarm Companies have not segregated out "which work was done on which counts." (September 30, 2014 Letter, Dkt. 569, Exh. B). *Lisle-Woodridge* is the perfect example of the type of case described in *Hensley:* one that that involves a common core of facts and related legal theories that cannot be viewed as discrete claims. *Hensley*, 461 U.S. at 435. There is no reason to parse attorney hours, as Defendants demand, because much of Alarm Companies' counsel's time was devoted to the litigation as a whole. *See id.* The focus is on the significance of the overall relief secured in relation to the hours reasonably devoted to the litigation. *Id.*

Defendants' argument that there have not been "substantive ruling[s]" on particular claims is similarly without merit. (September 16, 2014 Letter, Dkt. 569, Exh. C). *See Hensley*, 461 U.S. at 435 (stating that a court's decision not to reach certain grounds is not a reason to reduce attorneys' fees where litigants in good faith raise alternative legal grounds for a desired outcome). In *Walker*, 800 F. Supp. 2d at 926, the court rejected defendant's contention that plaintiff only prevailed on some of her claims and some of the relief awarded was agreed to by defendant, because the court had already decided that the plaintiff prevailed. *Id.* Therefore,

---

[5] This type of claim-splitting is even more inappropriate in this case, where this Court concluded that Alarm Companies' Complaint, though structured as multiple counts, presented a single claim. *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*, 973 F. Supp. 2d 839, 841 (N.D. Ill.2013) ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.") (quoting *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992)).

8

LISLE\159198.7
ID\KBM - 089112\0034

defendant's arguments were not relevant to the reasonableness inquiry, which focuses on the results obtained, and the defendant failed to point to any case in which a prevailing party's fee was reduced because some of plaintiff's relief was agreed to by defendant. *Id.*

Remarkably, Defendants focus on the relatively low amount of damages paid to Alarm Companies as proof that the fees are "unreasonable" (September 23, 2014 Letter, attached hereto as Exh. A). The Seventh Circuit has rejected such a simplistic argument. *See Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545-46 (7th Cir. 2009). Further, Defendants ignore the broad injunctive relief awarded to Alarm Companies and the fact that Alarm Companies could not have recovered any damages from the District. *See Lefemine* 133 S. Ct. at 11; *Lefemine v. Wideman*, 758 F.3d 551, 559 (4th Cir. 2014) ("Lefemine successfully proved the elements required to secure the relief he sought—namely, an injunction and a declaratory judgment. And [] Lefemine could not have obtained money damages against Defendants for reasons related not to the merits of his case, but rather to the special governmental immunities and defenses that weigh in favor of awarding fees").

In some circumstances, fees to a prevailing party may be reduced where the plaintiff fails to prevail on distinctly different claims that are based on different facts and theories. *Hensley*, 461 U.S. at 434. Such a situation arose where, for example, a plaintiff lost on four of his six claims at trial (*Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014)) or where the trial court ruled against a plaintiff on summary judgment on a claim that was so substantial and discrete that it had to be considered in evaluating plaintiff's overall success (*Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010)). By contrast, Alarm Companies' Complaint was grounded in the same set of facts and same basic legal theory—that Defendants acted illegally by interfering with Alarm Companies' contracts with their customers in order to achieve their own monopolistic ends.

9

Moreover, Alarm Companies have not lost or had any negative rulings entered against them on any claim. Quite the contrary, Alarm Companies' counsel's work on all issues and facets of this case contributed to the success of the litigation as a whole. Thus, an award of the full attorneys' fees requested would be in line with the Seventh Circuit's approach for nearly three decades, one that considers the realities of litigation and focuses primarily on the plaintiff's overall success. *See Jaffee*, 142 F.3d at 414.

## IV. ALARM COMPANIES ARE ENTITLED TO FEES FOR TIME SPENT DEFENDING THEIR RIGHT TO ATTORNEYS' FEES.

Alarm Companies also seek fees for time spent pursuing their entitlement to attorneys' fees that would not have been necessary, but for Defendants' flip-flopping and subverting a productive conversation because of their refusal to recognize Alarm Companies as prevailing parties. *See Delgado v. Mak*, 2009 U.S. Dist. LEXIS 131241 (N.D. Ill. Apr. 23, 2009) (granting attorneys' fees for hours expended preparing and litigating plaintiffs' attorneys' fee petition); *see also Lefemine*, 758 F.3d at 559.

## V. THE BULK OF ALARM COMPANIES' COSTS ARE RECOVERABLE.

Defendants challenge Alarm Companies' request for computerized legal research costs, yet precedent supports an award of these expenses as part of attorneys' fees. *See Tchemkou v. Mukasey*, 517 F.3d 506, 512-13 (7th Cir. 2008) (citing *Haroco v. American Nat'l Bank & Trust of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 2004)). Though amounts for online legal research were included in the request for costs, these amounts are recoverable as a part of an attorneys' fees award. Defendants challenge many of Alarm Companies' costs, but the bulk of the requested costs are recoverable. Of the $99,484.75 requested in costs, $31,730.75 are recoverable as costs with another $33,814.77 recoverable for legal research as attorneys' fees. The remaining costs related to expert witnesses would not be recoverable.

10

## CONCLUSION

For the reasons stated herein and in Alarm Companies' Motion for an Award of Attorneys' Fees and Costs, Alarm Companies have prevailed in this action and are entitled to an award of a reasonable fee and costs.

Dated: October 8, 2014

Respectfully submitted,

By:   /s/ Bruce L. Goldsmith
      One of the attorneys for Plaintiffs

Bruce L. Goldsmith, ARDC No. 0996939
David Bressler, ARDC No. 6182549
DYKEMA GOSSETT PLLC
4200 Commerce Court, Suite 300
Lisle, Illinois 60532
(630) 245-0400

*Attorneys for Plaintiffs, Alarm Detection Systems, Inc., D.M.C. Security Services, Inc., Illinois Alarm Services, Inc. and SMG Security Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 8, 2014, he caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties to this action via their counsel of record at their e-mail addresses on file with the Court.

/s/ Bruce L. Goldsmith

Bruce L. Goldsmith, ARDC No. 0996939
David Bressler, ARDC No. 6182549
DYKEMA GOSSETT PLLC
4200 Commerce Court, Suite 300
Lisle, Illinois 60532
(630) 245-0400

*Attorneys for Plaintiffs, Alarm Detection Systems, Inc., D.M.C. Security Services, Inc., Illinois Alarm Services, Inc. and SMG Security Systems, Inc.*

# PRETZEL & STOUFFER, Chartered

ONE SOUTH WACKER DRIVE · SUITE 2500
CHICAGO, ILLINOIS 60606-4673
312-346-1973
FACSIMILE 312-346-8242
www.pretzelstouffer.com
*Founded 1946*

September 23, 2014

MIGUEL A. RUIZ
DIRECT DIAL 312-578-7450
EMAIL: mruiz@pretzelstouffer.com

OUR FILE NUMBER
211-073934

**Bgoldsmith@dykema.com**
Mr. Bruce Goldsmith
Dykema
4200 Commerce Court
Lisle IL 60532

    Re:    ADT v. LWFPD, et al./Docket No.: 10 cv 04382

Dear Bruce:

    We acknowledge receipt of your letter dated September 19, 2014. My response follows.

    The defendants have not taken the position that plaintiffs are not entitled to reimbursement of attorneys' fees. You misstate my September 16, 2014 letter and misrepresented the defendants' position to Judge Shadur at the September 17, 2014 court status. In fact, in my September 16, 2014, letter, I did not state that plaintiffs were not prevailing parties. Rather, I requested that you segregate out the work on non-prevailing claims. As set forth in my letter, and based upon the rulings of Judge Shadur and the Seventh Circuit, plaintiffs could not have been prevailing parties under causes of action which were never addressed by any court.

    I am familiar with the *Hensley v. Eckerhardt* opinion. It was cited on page 2 of my September 16, 2014 letter. Your reference to the *Young v. City of Chicago* opinion (incorrect citation), is misplaced. In *Young*, the court held that a defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party. 202 F.3d 1000. As stated in my previous letter and above, the defendants have not taken the position that plaintiffs are not entitled to fees. We do, however, dispute that plaintiffs are entitled to 100% of their attorneys' fees.

    In *Montanez v. Simon*, the Seventh Circuit addressed the issue of how much in fees should be awarded in cases of limited success. 755 F.3d 547 (2014). The district court reduced the fee request by striking hours as unnecessary or improperly documented, reducing the lawyers' billing rates, and slashing the resulting "lodestar" figure in half to account for the *limited success on the merits* (emphasis added). *Id.* at 550. The Seventh Circuit noted the where the hours spent on successful claims can easily be distinguished from those spent on unsuccessful claims, the



court can simply strike the latter entries when computing the lodestar. *Id.* at 553. We believe that our request is in line with this approach.

Next, the defendants did not object to the attorney rate. We merely asked for the paralegal or "legal specialist" rate. However, we note that Exhibit G does not reflect a frozen attorney rate. We recognize that the last page of Exhibit G states "90% of 2010 rate" but it is unclear what this means or how it impacts the attorney billing total. It would have been easier if plaintiffs had provided each attorney's total hours and multiplied the total hours by the 2010 rate. The spreadsheets that you provided to us were not helpful on this issue.

As you know, the party seeking a fee award bears the burden of establishing the market rate for the work. While your declaration explains the rate and how it compares to hourly rates at your firm's suburban office, neither your declaration nor the rate itself bears any relationship with the local market rate for similar attorney's services; yet we did not make your rate an issue. I point this out merely to demonstrate that the defendants have not been unreasonable in their response. Conversely, to expect a 100% reimbursement of approximately $2.3 million in attorneys' fees on a case where the plaintiffs recovered $17,767 is unreasonable. As the court noted in *Montanez*, "the 50% reduction was not an abuse of discretion, and the final fee award of $108,350.87 was quite 'generous in relation to [plaintiff's $2,000] recovery" *Id.* at 557.

With regard to the costs, we have provided you with a clear and concise response.

Your September 19, 2014 letter states that you do not intend to respond to my September 16, 2014 letter. We do not believe that plaintiffs' position complies with the requirements of LR 54.3. Nonetheless, we anticipate that the defendants will be in a position – even given the incomplete information – to make an offer regarding plaintiffs' fees and costs by the end of this week.

Please contact me if you wish to discuss the defendants' position or my letter.

Thank you.

Very truly yours,

PRETZEL & STOUFFER, CHARTERED

By: *Miguel A. Ruiz*
      Miguel A. Ruiz

MAR/gac
N:\wpdata\MRuiz\ADT v. Lisle Woodridge\Correspondence\Goldsmith 92214.wpd

cc: Mr. Christopher Murdoch
     Mr. Martin LaPointe
     Ms. Suzanne Crowley