**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ADT SECURITY SERVICES, INC.**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 4382 |
| | ) | |
| **LISLE-WOODRIDGE FIRE PROTECTION DISTRICT**, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before this Court are memoranda and supplemental memoranda from plaintiffs Alarm

Detection Systems, Inc. and other alarm companies (collectively "Alarm Companies") and

defendants Lisle-Woodridge Fire District ("District") and Chicago Metropolitan Fire Prevention

Company ("Chicago Metro"),[1] addressing the only issue left to be resolved in this long-running

litigation:  Alarm Companies' entitlement to attorney's fees and expenses under the Civil Rights

Attorney's Fees Award Act of 1976 (42 U.S.C. § 1988) and the Clayton Act (15 U.S.C. §§ 15,

26).[2]  For the reasons set out below, Alarm Companies are held to be entitled to such attorney's

fees and expenses, albeit at an amount somewhat lower than they have demanded.

_____

   [1] This opinion identifies Alarm Companies' and defendants' respective submissions as
"A." and "D." followed by appropriate designations: memoranda as "Mem. --" and "Resp.
Mem. --" and supplemental memoranda ordered by this Court as "Supp. Mem. --."

   [2] All further references to 42 U.S.C. § 1988 take the form "Section 1988."  All further
references to 15 U.S.C. §§ 15 and 26 will employ the Title 15 numbering -- "Section 15" and
"Section 26" -- rather than the Clayton Act's internal numbering.

## Factual and Procedural Background

Although it would be tedious to relate at length the facts that gave rise to this litigation, not to mention the tortuous history of the proceedings before this Court and the Court of Appeals, a brief review of both is necessary to give some context to this final (it is devoutly wished) opinion. What follows is a factual summary condensed from one prior published opinion by this Court (799 F. Supp. 2d 880 (N. D. Ill. 2011)) and two opinions by our Court of Appeals (672 F.3d 492 (7th Cir. 2012) ("ADT I") and 724 F.3d 854 (7th Cir. 2013) ("ADT II")).[3]

District is a municipal corporation organized under the Illinois Fire Protection District Act ("Illinois Act," 70 ILCS 705/1 to 705/24), with power to regulate fire safety within its bounds. Alarm Companies provide fire alarm monitoring services to private businesses and residences within the bounds of the District. In September 2009 District passed an ill-starred ordinance requiring all businesses and residences within its jurisdiction to obtain fire alarm monitoring services solely from District -- while at the same time District purchased certain alarm equipment solely from Chicago Metro. That ordinance, along with a letter sent to businesses declaring their contracts with Alarm Companies "null and void," were part of a scheme to increase District's revenue and set up an alarm-monitoring monopoly. After passage of the ordinance, the fire alarm monitoring regime operating within the Lisle-Woodridge District boundaries was less safe and less effective than the one that had previously prevailed. That drop in safety resulted in no small part from the fact that District had to abandon nationally-recognized fire safety standards in order to oust Alarm Companies from the local market and

_____

[3] Note that both the cited opinion of this Court and ADT I included some provisional statements of fact that were later found to be untrue once this Court held an evidentiary hearing and made findings of fact, as recounted in ADT II, 724 F.3d at 861. Obviously none of those provisional "facts" are included in the following recitation.

install itself (and Chicago Metro) in their place. And, roughly speaking, it was District's abandonment of those standards that violated the Illinois Act.

Alarm Companies filed this action against District and Chicago Metro, alleging violations of the Constitution (specifically, the Contracts Clause and the Fourteenth Amendment), the Sherman Antitrust Act and the Illinois Act. This Court granted partial summary judgment to Alarm Companies on the question whether District exceeded its authority under the Illinois Act and, finding that it did, issued a preliminary injunction against District barring it from enforcing its ordinance (see this Court's opinion at 799 F. Supp. 2d 880). District appealed, and in ADT I the Court of Appeals affirmed in major part, reversed in lesser part and remanded the matter to this Court. After an evidentiary hearing this Court made findings of fact and issued the Modified Permanent Injunction (see its August 7, 2012 opinion at 2012 WL 3241562 and the Injunction itself at Dkt. 391), which the Court of Appeals upheld with some minor modifications in ADT II.

Alarm Companies, District and Chicago Metro then proceeded with discovery regarding the still-unresolved damages claims under the Clayton Act and 28 U.S.C. § 1983 ("Section 1983"). Somewhere along the line ADT Security Systems, Inc., which up to that point had participated fully as a plaintiff in the litigation, then entered into a consent decree with both defendants that settled its damages claims and its outstanding demands for injunctive relief as to Chicago Metro and that presumably contained some sort of fee award (Dkt. 550). But the remaining Alarm Companies -- which have filed the fee petition with which this opinion treats -- continued to litigate the damages claims until District and Chicago Metro tendered the modest maximum amount to which Alarm Companies would be entitled had they prevailed. Because that mooted the controversy (Alarm Companies' demand for equitable relief already having been

satisfied by the entry of a permanent injunction), this Court dismissed the case for lack of subject matter jurisdiction (Dkt. 563).

That brought the parties to the fees stage of litigation. Negotiations over fees proved fruitless: Alarm Companies blamed District and Chicago Metro for clinging to a narrow view of what it means to "prevail" in litigation (see Sep. 17, 2014 Status Hrg. Tr. 4:20-5:3, 7:6-9:4 (Dkt. 566)), which made it impossible to negotiate productively, while defendants argued that Alarm Companies were not negotiating in accordance with the guidelines set out by this District Court's LR 54.3 (A. Mem. Ex. A at 2). Apparently fed up after months of wrangling, Alarm Companies filed a motion for attorney's fees. Defendants responded in opposition, and this Court ordered supplementary briefing on the question whether (and to what extent), in the course of making a fee award, it could consider a prevailing party's motivation for continuing to litigate a lawsuit. With those supplemental memoranda having been filed, the fee issue is at last ripe for decision.

### Legal Principles Underlying the Award of Attorney's Fees

In the absence of a contrary statutory command, the default rule in the United States is that each party to a lawsuit bears its own costs, including attorney's fees (see Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53 (2010)). In this case there are three statutory provisions that provide a possible basis for the award of attorney's fees to Alarm Companies: Section 1988, the Clayton Act's provision for private suits for damages (Section 15) and the Clayton Act's sister provision for private suits for equitable relief (Section 26). This opinion needs to address defendants' potential liability for fees under each of those statutes because both equitable relief and damages were at issue during the litigation, because non-formal-state-actor

Chicago Metro's liability for fees under Section 1988 is in some doubt[4] and because District

cannot be held liable for fees under Section 15 as a result of the Local Government Antitrust Act

(15 U.S.C. § 35).[5]  Hence a quick review of each potential statutory basis for fee-shifting in this

case is in order.

Section 1988(b) creates an entitlement to attorney's fees for the prevailing party in any

action to enforce certain enumerated civil rights statutes, including Section 1983:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982,
> 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the
> prevailing party, other than the United States, a reasonable attorney's fee as part of
> the costs.

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S.

598, 603 (2001) held that "a 'prevailing party' is one who has been awarded some relief by the

court."  That distinguishes prevailing parties from those who obtain relief via a voluntary

_____

[4] Fee liability under Section 1988 in this action is premised on Section 1983, which in turn imputes liability only to "state actors."  At first glance that might seem to free Chicago Metro (a private entity) from any potential fee liability under Section 1988.  But there are two reasons to doubt such a conclusion.  First, as this Court explained in its August 28, 2012 opinion denying Chicago Metro's motion for summary judgment (2012 WL 3775974, *1), under the facts of this case "a factfinder, instructed as to the relevant criteria under Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961) and its progeny, could reasonably find Chicago Metro to be a 'state actor' so as to bring constitutional principles and 42 U.S.C. § 1983 into play."  Thus, until defendants mooted the controversy, the issue of Chicago Metro's liability under Section 1983 was very much alive.  Second, Section 1988 does not itself contain a state action limitation -- instead it refers only to a prevailing party's entitlement to fees, not to a losing party's liability for the same.  That has led our Court of Appeals, at least in one instance, to award fees under Section 1988 against an intervenor-defendant as to whom no substantive liability under Section 1988 had ever been alleged, much less found (see Charles v. Daley, 846 F.2d 1057, 1064 (7th Cir. 1988)).

[5] That statute does not exempt local units of government such as District from liability for fees under Section 26, however.

settlement or a unilateral tender of complete relief by the defendant (id. at 605, emphasis in original):

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties.

Thus it is a judicially sanctioned "alteration in the legal relationship of the parties" that triggers a plaintiff's eligibility for an award of fees under Section 1988 (see Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago, 646 F.3d 992, 994 (7th Cir. 2011)).

As to the two provisions of the Clayton Act at issue in this case, each provides for attorney's fees. But because they do so in different language, separate analysis is called for.

First is Section 15, which allows a private party to sue for damages under the antitrust laws:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Under that provision, the prerequisite for an award of attorney's fees is a showing of injury (see, e.g., Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 418-19 (3d Cir. 1993)). Unlike Section 1988, Section 15 does not include a "prevailing party" requirement (id. at 418 n.5). Also in contrast to Section 1988, Section 15 makes a fee award mandatory rather than discretionary (see State of Ill. v. Sangamo Constr. Co., 657 F.2d 855, 858 (7th Cir. 1981)).

As for Section 26, it mandates an award of attorney's fees to any plaintiff who "substantially prevails" in an action for injunctive relief:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the

parties, against threatened loss or damage by a violation of the antitrust laws. . . In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

It is not entirely clear to what extent <u>Buckhannon</u>'s definition of "prevailing party" applies to Section 26's "substantially prevails." Our own Court of Appeals has never ruled on the effect, if any, of that decision on the award of fees under the injunctive provisions of the Clayton Act. More on that subject later.

### Alarm Companies Are Entitled to an Award of Attorney's Fees

Alarm Companies won a permanent injunction against defendants[6] and thus are obviously prevailing parties. In fact defendants so admit (see D. Resp. Mem. 6) but nonetheless contend that Alarm Companies are not entitled to any award of attorney's fees. As defendants would have it, because this Court entered the permanent injunction on the basis of the Illinois Act and not a federal fee-shifting statute, Alarm Companies did not "prevail" in respect to any fee-shifting statute and hence are not entitled to fees. In other words, under defendants' view of fee-shifting statutes fees can be awarded when a plaintiff has received not just a judicial determination of entitlement on the merits, but also an adjudication that particular theories of relief the plaintiff has put forward (i.e., those tied to fee-shifting statutes) are meritorious.

Neither the statutes at issue in this case nor the relevant case law supports such a cramped view. In fact both the statutes and the caselaw explicitly take the <u>opposite</u> position.

---

[6] Although the Modified Permanent Injunction mentions only District by name, it binds Chicago Metro equally under Fed. R. Civ. P. ("Rule") 65(d)(2). Hence the entry of the Modified Permanent Injunction suffices to make Alarm Companies prevailing parties as to both District and Chicago Metro. But as will be seen, the Modified Permanent Injunction reflected greater success against District than against Chicago Metro.

To begin with the statutory language, as already explained Section 1988 allows courts to award fees to parties who prevail in "<u>any</u> <u>action</u> or proceeding" (emphasis added) to enforce the Reconstruction-era civil rights laws. Similarly, Section 26 positively mandates that fees be awarded to a party who substantially prevails in "<u>any</u> <u>action</u> under this section" (emphasis added). In common legal parlance, "actions" are simply lawsuits (see <u>Black's Law Dictionary</u> 31 (8th ed. 2004)), and that meaning and its legal significance are not affected by the fact that federal plaintiffs regularly put forward numerous theories of relief in a single action even though they are not required to do so (<u>NAACP v. Am. Family Mut. Ins. Co.</u>, 978 F.2d 287, 292 (7th Cir. 1992)).

So the straightforward meaning of two out of the three fee-shifting provisions at issue in this action immediately sinks defendants' argument -- the proper inquiry is whether Alarm Companies have prevailed as to the <u>action</u> as a whole, not as to any particular theory or theories of relief. And as for the third and final provision, Section 15 is if anything the broadest of all -- recall that it literally requires only a finding of injury.

It might have been expected that defendants' advancement of their narrower view of fee awards, which they have tendered here, would have been predicated on their having found some caselaw that contravened the plain meaning of those statutes. But that is not at all the situation -- in fact the relevant cases unambiguously support the reading just set out in this opinion.

As for Section 1988, <u>Maher v. Gagne</u>, 448 U.S. 122, 132 n.15 (1980) specifically addressed actions such as the one in this case:

> The legislative history makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under [Section 1988].

Wisconsin Hosp. Ass'n v. Reivitz, 820 F.2d 863, 869 (7th Cir. 1987) (internal citation omitted) summarized that rule in slightly different words, but with no change in substance:

> Moreover, if the plaintiff has a substantial constitutional ground, but prevails on an alternative nonconstitutional ground, he can still be awarded attorney's fees under section 1988, provided the grounds are closely related factually.

And in that respect Smith v. Robinson, 468 U.S. 992, 1005 (1984) made it clear fully three decades ago that the standard for determining whether a constitutional ground is "closely related" to the nonconstitutional ground to support a fee award is the "common nucleus of operative fact" standard governing claims enunciated in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). In this case one set of facts gave rise to all of Alarm Companies' asserted grounds for relief, and defendants nowhere challenge the substantiality of Alarm Companies' constitutional theories of relief (nor could they credibly do so), so that Alarm Companies are plainly eligible for a fee award under the reasoning of Maher.

Defendants have put forward the suggestion that Buckhannon limited or even abrogated the rule that both Maher and Reivitz applied, but Buckhannon really does not speak to the issue. Buckhannon, 532 U.S. at 605 simply makes it clear that the prerequisite to prevailing party status is an "alteration in the legal relationship of the parties."  It nowhere requires a judicial decision as to the merit of particular legal theories that, as here, are simply different grounds for demanding the same type of relief as a result of the same set of facts.  And indeed the Courts of Appeals have continue to apply the rule in Maher after Buckhannon was decided (see, e.g., Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 551 (5th Cir. 2003) and Gerling Global Reins. Corp. of Am. v. Garamendi, 400 F.3d 803, 808 (9th Cir. 2005), unrelated section of opinion amended at

410 F.3d 531 (9th Cir. 2005)).  So there is no merit in defendants' assertion that <u>Buckhannon</u> somehow abrogated <u>Maher</u>'s teaching about undecided constitutional grounds for relief.[7]

Undaunted (and despite admitting earlier in their brief that Alarm Companies prevailed in the action), defendants also contend that their tender of damages somehow undid Alarm Companies' status as prevailing parties.  It is true that <u>Buckhannon</u> teaches that a plaintiff cannot become a prevailing party simply by dint of a defendant's voluntary change in behavior.  But defendants adduce no cases, and this Court could find none, in which <u>Buckhannon</u> is read to empower a defendant to <u>erase</u> a plaintiff's status as prevailing party -- at least not when, as here, that status has become irrevocable due to the permanent nature of relief awarded earlier in the litigation.  As <u>Young v. City of Chicago</u>, 202 F.3d 1000, 1000-01 (7th Cir. 2000) (per curiam) put it:

> A defendant cannot defeat a plaintiff's right to attorneys' fees by taking steps to moot the case after the plaintiff has obtained the relief he sought, for in such a case mootness does not alter the plaintiff's status as a prevailing party.

_____

[7] There is even less probity in defendants' assertion that <u>Smith</u> applies to limit <u>Maher</u> here.  <u>Smith</u> took issue with the award of fees under Section 1988 when the presence of a non-fee-shifting <u>federal</u> statute reveals a Congressional intent not to allow fee awards.  Here of course the only other statutes implicated by Alarm Companies' action are the Clayton Act (which <u>does</u> provide for fee shifting) and the Illinois Act (which is a <u>state</u> enactment).  Clearly the Supremacy Clause if nothing else would prevent a state legislature's non-fee-shifting enactments from stripping federal courts of their Congressionally-granted discretion to award fees (cf. <u>Brinn v. Tidewater Transp. Dist. Comm'n</u>, 242 F.3d 227, 232-33 (4th Cir. 2001)).  Perhaps sensing that the distinction between federal and state law is fatal to their argument, defendants' counsel inexcusably misstate the facts, and thus the holding, of <u>Smith</u>.  They assert that the <u>Smith</u> plaintiffs "obtained relief under the Education of the Handicapped Act (EHA), a <u>state</u> law non-fee shifting claim, while the federal fee shifting claims were not decided" (D. Resp. Mem. 6, emphasis added).  That Act was of course a <u>federal</u> non-fee-shifting statute.  Zealous advocacy is one thing, but defendants should know better than to misrepresent the posture of a case to any court that they know reads all of the parties' cited authorities, especially when defendants have wrongly asserted that the case on which they attempt to rely is controlling.

Hence there is no merit to defendants' contention.

In sum, then, neither the fact that Alarm Companies' constitutional and antitrust theories of relief went unadjudicated nor the fact that defendants tendered damages to Alarm Companies after Alarm Companies had already obtained final injunctive relief affects Alarm Companies' express entitlement to fees under Section 1988. With that question resolved, this opinion moves on to fee liability under the Clayton Act.

First as to its Section 26: While there is no case as directly on point as <u>Maher</u> was in regard to Section 1988, there is also no reason to construe Section 26 more narrowly than Section 1988. As already noted, both statutes refer to "actions," not to theories or grounds for relief, and both permit fee awards to prevailing parties. Section 26 does insert the modifier "substantially" before "prevails," and that word can mean one of two things, as <u>Pierce v. Underwood</u>, 487 U.S. 552, 564 (1988) (internal citation and punctuation omitted) pointed out:

> [T]he word "substantial" can have two quite different -- indeed, almost contrary -- connotations. On the one hand, it can mean "[c]onsiderable in amount, value, or the like; large" -- as, for example, in the statement, "He won the election by a substantial majority." On the other hand, it can mean "that is such in substance or in the main," -- as, for example, in the statement, "What he said was substantially true."

Thus the Clayton Act's "substantially prevails" might mean either "prevails to a high degree" or "prevails for the most part or in the main." But here Alarm Companies clearly prevailed in this action under either standard: They prevailed to a high degree by obtaining a permanent injunction that broke up defendants' monopolization of the fire alarm monitoring business, and they prevailed in the main because they obtained most (though not all) of the injunctive relief they sought. So Alarm Companies are also entitled to an award of fees under Section 26.

Second and finally as to Section 15, it is unnecessary to determine whether a <u>Maher</u>-style analysis would apply to fee awards under that statute because District is immune from fee liability under that provision (see 15 U.S.C. § 35) and because this Court has made no finding that Chicago Metro caused Alarm Companies an economic injury under the antitrust laws. As explained earlier, such injury is the prerequisite to any award of fees under Section 15. Alarm Companies assert that Chicago Metro's tender of damages was an admission of liability on that score, but a defendant's voluntary change in behavior -- even when it follows partial judgment as a matter of law -- does not amount an admission of wrongdoing (cf. <u>Zessar v. Keith</u>, 536 F.3d 788, 798 (7th Cir. 2008)).

It is thus beyond meaningful dispute that Alarm Companies are entitled to an award of fees. That in turn calls for the resolution of two fundamental questions: (1) exactly what amount Alarm Companies are entitled to and (2) District's and Chicago Metro's respective liabilities for that amount. This opinion is then free to turn to the calculation of fees before addressing defendants' respective liabilities for those fees.

Before that is done, however, something should be said about the contrast between what this opinion has resolved up to this point and what is to come. This opinion has up to now dealt with the issue of Alarm Companies' entitlement to a fee award in the conventional way, identifying and applying the legal principles that control that subject. But what remains -- the quantification of that award and the extent of its imposition against the two defendants -- is by its very nature dependent on the exercise of judicial discretion, where there are no set formulas or immutable legal principles that drive the outcome.

It must be recognized up front, then, that those issues necessarily involve subjective as well as objective evaluations. For those purposes this Court perforce draws on its having lived

intimately with this case over its entire five-year lifetime, as well as drawing on its experience of more than three decades in the practice of law and then an even longer tenure on the bench. With that said, the issues of quantification of the award and its allocation to the two defendants can proceed.

## Factors Affecting Calculation of the Fee Award

As the seminal opinion in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) has explained, the first step in the calculation of a fee award is the computation of a lodestar:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.

Defendants do not challenge the reasonableness of Alarm Companies' attorneys' proposed hourly rates (D. Resp. Mem. 12 n.6) and fail to raise any substantive objection to the validity of their hourly records.[8] They do, however, challenge on a number of grounds the total fees and expenses that Alarm Companies have claimed.

First, defendants again betray their fundamental misunderstanding of fee awards under "prevailing party" statutes such as Section 1988 and Section 26. Defendants argue that Alarm Companies are entitled to recover attorney's fees only for the time they spent pursuing "successful" theories (by which defendants essentially mean those based on the Illinois Act) and not for time that they spent pursuing "unsuccessful" theories (by which defendants mean the antitrust and constitutional theories that ultimately received no final adjudication one way or another because of defendants' own actions taken to moot those subjects). That position totally

_____
[8] See the Appendix.

ignores -- or, perhaps more accurately, flouts -- the teaching of <u>Hensley</u>, 461 U.S. at 435

(internal citation omitted), which is so directly on point that it is worth quoting at length:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Here Alarm Companies surely "obtained excellent results": They won a sweeping

injunction and then successfully defended it, not once but twice, before the Court of Appeals.

That injunction gave them essentially all of the equitable relief they demanded against District,

and thereafter defendants tendered all the damages that Alarm Companies had demanded.[9] That

"result is what matters," and because of it Alarm Companies are presumptively entitled to

recover a "fully compensatory fee," that is, 100% of their fee demand -- including the time they

have spent litigating the issue of fees.

---

[9] Defendants repeatedly characterize their tender of damages as voluntary, but that is not true in real-world terms. At least one of this Court's findings of fact included in the Modified Permanent Injunction -- to the effect that many of Alarm Companies' commercial accounts terminated their contracts with Alarm Companies solely because of the unauthorized actions of District (see Mod. Perm. Inj. ¶ 32 (Dkt. 391)) -- made it inevitable that District would be liable for at least <u>some</u> amount of damages (see <u>Gen. Motors Corp. v. Romein</u>, 503 U.S. 181, 186 (1992), which recites the standard of liability for violations of the Contracts Clause; see also <u>Nat'l Rifle Ass'n</u>, 646 F.3d at 994, which holds that a defendant's "voluntary" change of behavior does not defeat fees liability when liability on the underlying substantive issue has become inevitable). Permanent injunctions are final judgments on the merits (<u>Plummer v. Am. Inst. of Certified Pub. Accountants</u>, 97 F.3d 220, 229 (7th Cir. 1996)), so that this Court's findings of fact, all of which were necessary to the judgment, are binding on the parties.

In that last respect defendants also challenge Alarm Companies' entitlement to "fees on fees" (fees for the present battle over fees).[10] Defendants contend that Alarm Companies did not abide by the process outlined in LR 54.3 and therefore should not be awarded fees for litigating their entitlement to fees. Alarm Companies counter that it was defendants who dragged things out by delaying their own disclosure of attorney's fees (see LR 54.3(d)(5)).

In truth, although Alarm Companies provided many hundreds of pages of time records to defendants, they refused to clarify or categorize those records in response to defendants' questions, causing defendants to cry "foul." But equally in truth, defendants have no one to blame but themselves for that refusal. Rather than putting forward reasoned grounds for requesting clarification of Alarm Companies' records, defendants repeatedly overplayed their hand during the LR 54.3 process by insisting -- against the unambiguous holding of Hensley and this Court's own oral admonitions (see the Sept. 17, 2014 Status Hrg. Tr. 9:6-10:19 (Dkt. 566)) -- that Alarm Companies could not recover fees for time spent litigating constitutional and antitrust theories of relief.

This Court can scarcely fault Alarm Companies for refusing to expend further time playing defendants' game. Defense counsel had ample opportunity to make reasonable requests of Alarm Companies and reasonable challenges to their hours totals. They wasted that opportunity in a misguided attempt to avoid the greater part of their obvious and inevitable

---

[10] This Court has often characterized that aspect of fee disputes as an example of these lines in Jonathan Swift's On Poetry, A Rhapsody:

> So, naturalists observe, a flea
> Hath smaller fleas that on him prey;
> And these have smaller still to bite 'em;
> And so proceed ad infinitum.

liability for Alarm Companies' attorney's fees. Alarm Companies may not be entitled to the full

amount they demand for litigation fees, but any limitation must be based on this Court's own

determination of reasonableness, not on defendants' transparent attempt to call the kettle black.

That brings the final issue, reasonableness, to the fore. Both Section 1988 and the

Clayton Act's Section 26[11] authorize an award of "reasonable" fees, and as <u>Hensley</u>, 461 U.S. at

433 pointed out, "It remains for the district court to determine what fee is 'reasonable'" (see also

<u>Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.</u>, 776 F.2d 646, 650 (7th Cir. 1985), entrusting the

reasonableness inquiry to the district courts' discretion in the context of the Clayton Act). In

making that determination courts may take a number of factors into account, the most prominent

being "the amount of time involved and the results obtained" (<u>Hensley</u>, 461 U.S. at 430 n.3). As

with any other area of the law where reasonableness comes into play, the court's determination is

not an exact science, as <u>Fox v. Vice</u>, 131 S. Ct. 2205, 2216 (2011) (internal quotation marks

omitted) has said succinctly:

> The essential goal in shifting fees (to either party) is to do rough justice, not to
> achieve auditing perfection. So trial courts may take into account their overall
> sense of a suit, and may use estimates in calculating and allocating an attorney's
> time. And appellate courts must give substantial deference to these
> determinations, in light of the district court's superior understanding of the
> litigation.

While as already described Alarm Companies obtained "excellent results" and thus are

presumptively entitled to a full fee award (see <u>Montanez v. Simon</u>, 755 F.3d 547, 556 (7th Cir.

2014)), this Court has repeatedly expressed its concern that Alarm Companies were excessively

focused on seeking to use the post-<u>ADT II</u> phase of the litigation either to impact other litigation

_____

[11]   As reflected in the preceding analysis, Section 15 has dropped out of the picture as
such, but that does <u>not</u> mean that the work done by Alarm Companies in the area covered by that
section is not compensable -- quite the opposite is true.

in other courts that have dealt with or are likely to deal with substantially similar issues and litigants or, alternatively, to influence other governmental bodies in their interaction with alarm companies (e.g., the Mar. 17, 2014 Status Hrg. Tr. 10:6-10:15 (Dkt. 539)).  This Court even went so far as to order supplemental briefing on whether Alarm Companies' motivation to use the present litigation for such purposes might affect their entitlement to a fee award.  Those memoranda produced somewhat more heat than light on both sides.  Neither party was able to come forward with cases specifically addressing the situation here, so that the application of more general principles is in order.

To set one thing straight, any such motivation is not a proper ground for denying Alarm Companies fees outright.  That is clear enough as to Section 1988, under which fees are to be awarded to a prevailing plaintiff "unless special circumstances would render such an award unjust" (Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012) (per curiam), quoting Hensley, 461 U.S. 429) -- and such circumstances are described narrowly indeed.[12]  It is doubly clear as to Section 26, which makes fee-shifting mandatory.  Having already found Alarm Companies to be prevailing parties under the Clayton Act, this Court simply has no discretion to deny an award of fees entirely (see Sangamo Constr. Co., 657 F.2d at 858).

_____

[12]  It does not constitute a "special circumstance" rendering an award unjust, for example, when plaintiffs litigate their claims to the bitter end despite the ongoing availability of political solutions to the issues they have brought before the court (see Hastert v. Ill. State Bd. of Election Comm'rs, 28 F.3d 1430, 1443-44 (7th Cir. 1993)).  Nor does it constitute a "special circumstance" when a plaintiff chooses to litigate a claim rather than pursue settlement proposals advanced informally by opposing parties or the court (see Raishevich v. Foster, 247 F.3d 337, 346-47 (2d Cir. 2001)).  Even in cases where a prevailing plaintiff was denied fees for needlessly prolonging the litigation, courts have focused not on the party's subjective motivation but on any objective indicia of bad faith:  the submission of misleading time records, settlement demands that far exceeded the recoverable amount of damages and so on (see, e.g., Vocca v. Playboy Hotel of Chicago, Inc., 686 F.2d 605, 607-08 (7th Cir. 1982) (per curiam)).

Still, based on this Court's own years-long observations of counsels' behavior on both sides of the "v." sign, it is clear that Alarm Companies' interest in such collateral goals resulted in same overly contentious behavior that unnecessarily prolonged the proceedings before this Court. So while defendants certainly bear the lion's share of the blame for the breakdowns in cooperation that have marked this case, Alarm Companies' unyielding stance unjustifiably expanded this litigation as well. District courts are free to reduce fee awards in such circumstances (see Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997)). And an across-the-board reduction in fees is appropriate where, as here, the records submitted by the prevailing party do not permit a line by line accounting (see Richardson v. City of Chicago, 740 F.3d 1099, 1103 (7th Cir. 2014)). Given that the great bulk of this case involved Alarm Companies' claims for injunctive relief, however -- and given that Alarm Companies were resoundingly successful in obtaining that relief -- the reduction in fees that this Court will order to reflect the time that Alarm Companies expended for such purposes will be a modest one.

## Fee Award Calculation

Now comes the final calculation of a fee award -- a mathematical operation in which (as forecast earlier) Sottoriva v. Claps, 617 F.3d 971, 976 (7th Cir. 2010) has said "[p]recision is impossible" and Richardson, 740 F.3d at 1103 has more recently voiced the same view in different language: "estimation is inevitable. No algorithm is available." Despite all that, this Court must of course "avoid[ ] arbitrary decisionmaking" Montanez, 755 F.3d at 555. That means that even when cutting fees (and later on, assigning liability) according to the unavoidably

inexact method of picking percentages,[13] this Court must give reasons for the percentages it does pick (see <u>Sottoriva</u>, 617 F.3d at 976).

Alarm Companies have demanded $2,329,874.10 in fees and expenses[14] before the current litigation over that subject (A. Supp. Mem. Ex. A at 4), and defendants effectively failed to challenge the legitimacy of that calculation in lodestar terms. That amount is ordered to be reduced, however, by 10% to reflect the just-mentioned consideration that Alarm Companies contributed to some extent to the overly contentious manner in which some aspects of this case were litigated, thus upping the ante. Aside from being a round number, the particular figure of 10% reflects this Court's best judgment -- having lived with the case for five-odd years and having reviewed the docket -- as to how much extra work Alarm Companies' counsel created unnecessarily by their occasional intransigence in the post-<u>ADT II</u> phase of the litigation. So Alarm Companies are entitled to collect $2,096,886.69 for fees incurred up to the time this Court dismissed the case for lack of subject matter jurisdiction.

Alarm Companies are also entitled to fees for litigating the issue of fees (see <u>Bond v. Stanton</u>, 630 F.2d 1231, 1235 (7th Cir. 1980)). It was obviously necessary for them to do so given defendants' tendentious assertion of baseless legal grounds for limiting Alarm Companies' fee award, as well as defendants' tardy settlement offer, which totaled only about a third of what defendants themselves expended in legal fees (see Dkt. 569; A. Supp. Mem. 13).

_____

[13] Again, such an across-the-board reduction by application of a percentage is necessary here because Alarm Companies' itemization of their fees and expenses in their presentation to defendants, which defense counsel objected to in part before dropping the issue (see Appendix), was not presented to this Court -- instead defendants chose to frame their opposition in global terms challenging the total claim for fees and expenses.

[14] In the interest of simplicity, all future references in this opinion will speak only of "fees," even though the gross amounts also listed include the related recoverable expenses.

But on one aspect of the fees dispute, Alarm Companies submit that they incurred fees and expenses in the amount of $57,778.80 <u>after</u> August 28, 2014 (A. Supp. Mem. Attach. 2 at 2), on services that had to relate solely to drafting their initial motion for fees and the supplemental memorandum ordered by this Court (recall that Alarm Companies' counsel had already compiled their fees for disclosure to defendants). Based on those lawyers' submitted hourly rates (A. Supp. Mem. Ex. B) (and allowing a reasonable estimate for the expenses component[15]), the fees component of that figure amounts to something in the range of 200 senior associate hours or 160 "member" (i.e., senior partner) hours. Either is plainly an excessive amount of time for experienced attorneys to spend preparing two motions. Half that amount would be reasonable, and accordingly Alarm Companies' award of fees on fees will be reduced by 50% to $28,889.40.

Alarm Companies' demand for statutory costs -- $4,444.86 -- was reduced substantially in response to defendants' objections, and it reflects a modest amount for some five years of litigation. It is granted in its entirety.

Tallying up the three amounts, Alarm Companies are entitled to collect $2,130,220.95 in attorney's fees and costs. Only one question remains, and that is how to apportion liability for that total between defendants.

### Defendants' Respective Liabilities for Fees

District courts have broad discretion to apportion liability for attorney's fees among defendants or instead to impose joint and several liability (see <u>Herbst v. Ryan</u>, 90 F.3d 1300,

---

[15] Such an estimate is called for because the gross amount has not been broken down in the submission to this Court. Precision is not required, however, for what is said in this sentence of the text.

1304 & nn.8-9 (7th Cir. 1996)).  Molnar v. Booth, 229 F.3d 593, 605 (7th Cir. 2000), reciting the

established standard, noted:

> A number of factors govern the decision whether to apportion or to use joint and
> several liability: the relative active or passive role each defendant played, fairness,
> and the goal of reimbursing private attorneys general.

While joint and several liability will often be appropriate in cases such as this one, where

multiple defendants all participated in a single wrong but in ways that would be hard to

disentangle, Herbst, 90 F.3d at 1305 sounded a note of caution:

> When this approach [of joint and several liability] is adopted, the court must be
> careful, however, to do so consistently with the preexisting background of
> substantive liability rules.

That is consistent with the teaching of Kentucky v. Graham, 473 U.S. 159, 165 (1985) that

"liability on the merits and responsibility for fees go hand in hand."

Yet at the same time, Section 1988 (and indeed Section 26 as well) are primarily

concerned with establishing eligibility parameters rather than liability parameters for fee awards.

Charles, 846 F.2d at 1064 (7th Cir. 1988) (emphasis in original), a case finding that losing

intervenors-defendants in a Section 1983 action were liable for fees without their ever having

been found liable on the merits, makes that plain:

> We therefore agree with the plaintiffs that because section 1988's paramount
> concern was to fashion the parameters of eligibility for fee awards, rather than to
> fix with precision the bounds of liability for such awards, the critical distinction
> for purposes of fixing fee liability in the somewhat atypical circumstances
> presented in this case is between prevailing and non-prevailing plaintiffs; it is not,
> as the intervenors argue, the distinction between intervening defendants found
> liable for substantive relief on the merits and intervening defendants not held
> liable for such relief.

At the possible risk of undue repetition, once again it has been made abundantly clear that

Alarm Companies are the prevailing plaintiffs in this action.  District was of course plainly liable

on the merits, and indeed most of the litigation took up the question whether District exceeded its authority under the Illinois Act (it did). While Chicago Metro's liability on the merits was somewhat more doubtful than District's, Chicago Metro was still, like the intervenors in <u>Charles</u>, clearly a losing party in the litigation. Although the Modified Permanent Injunction did not name Chicago Metro, it bound Chicago Metro equally under Rule 65(d)(2) and effectively broke up Chicago Metro's monopolistic arrangement with District. Indeed, Chicago Metro thought its interests sufficiently prejudiced by that injunction that it too appealed to our Court of Appeals (see Dkt. 403), which upheld the injunction in all essential respects (<u>ADT II</u>, 724 F.3d at 876).

In sum, Chicago Metro litigated this case vigorously against Alarm Companies, final injunctive relief was awarded against Chicago Metro, and Alarm Companies prevailed. That is more than enough to establish Chicago Metro's liability for fees. And as indicated earlier, the <u>Hensley</u>-announced principle that negates any slice-and-dice parsing of fee awards under circumstances such as those presented here also operates in the determination of fee allocation among defendants based on one defendant (District) being clearly liable under both Section 1988 and Section 26 while the other defendant (Chicago Metro) is squarely liable under Section 26, though its potential liability under Section 1988 would require an added analytical step.[16]

To put the matter in a somewhat different way, Alarm Companies undoubtedly achieved a much higher degree of success against District than against Chicago Metro. In that respect this Court made no specific findings that Chicago Metro had engaged in illegal acts. And in contrast to the situation with District, this Court's findings of fact did not inevitably implicate Chicago

---

[16] Under the circumstances, this Court need not further lengthen this opinion by taking that extra analytical step. Instead it will consider the defendants' comparative responsibility on the key issue and the result in this action (it will be recalled that the damages issue ultimately proved to pale in importance as compared with the vital injunctive relief).

Metro in liability for damages.  In other words, Alarm Companies won a resounding victory

against District but a more limited one against Chicago Metro.  That then calls for an

apportionment of fee liability among the defendants rather than the imposition of joint and

several liability (see <u>Herbst</u>, 90 F.3d at 1304 n.9).  Given the different levels of success that

Alarm Companies obtained as against each defendant, an allocation of 80% of the fee liability

against District and 20% of the fee liability against Chicago Metro is just.

<u>**Conclusion**</u>

Accordingly, under Section 1988 and Section 26, Alarm Companies are entitled to

recover attorney's fees and statutory costs in the aggregate amount of $2,130,220.95.  Exercising

its discretion to apportion fees, this Court allocates liability severally between the two

defendants:  District is adjudicated liable for $1,704,176.76, which represents 80% of the total

award, while Chicago Metro is adjudicated liable for $426,044.19, which represents 20% of the

total award.

_____
Milton I. Shadur
Senior United States District Judge

Date:  February 17, 2015

**Appendix**

Some explanation of this Court's treatment of defendants' absence of appropriate objections to either element of the lodestar -- rate and hours -- is in order. Defendants submitted an "Initial Response to Plaintiff's Motion for an Award of Attorney Fees and Costs" (Dkt. 569, Sept. 30, 2014) in which they requested that Alarm Companies' fees motion "be denied without prejudice in order to give the parties an opportunity to address some of the Defendants' concerns" about that motion (id. at 1). Defendants' submission recounted the history of their fees negotiations with Alarm Companies, and in that context informed the Court that they had raised a few objections with Alarm Companies already: Only two of Alarm Companies' attorneys' assertedly had antitrust experience, some time entries were vague, and at least a few entries as to costs apparently did not relate to this action at all (id. at 2). That seemed to presage a more particularized challenge to the hours element of Alarm Companies' proposed lodestar calculation.

At a status hearing the next day, this Court inquired of defendants' counsel as to whether they expected to challenge Alarm Companies' demand for fees by objecting to either or both lodestar elements, or whether instead defendants intended to level a more fundamental challenge to Alarm Companies' entitlement to fees at all (Oct. 1, 2014 Status Hrg. Tr. 5:19-6:23 (Dkt. 572)). Counsel for Chicago Metro responded that defendants expected to raise both challenges (id. at 7:1-7:9), although he later noted that he did not actually know whether defendants would object to Alarm Companies' hours total -- he needed to consult with Chicago Metro's insurer first (id. at 12:2-12:11). In any case, this Court then requested that defendants focus their next submission first on the subject of the lodestar calculation and then on the question of how the extent of Alarm Companies' success might affect the compensability of their fees more generally (id. at 7:10-7:24). This Court consequently entered and continued Alarm Companies' motion for

fees, granted Alarm Companies leave to supplement their motion and ordered defendants to file a more amplified response (Dkt. 570).

But surprisingly, neither that response nor the supplemental response on the question of Alarm Companies' motivation raised any challenge at all to Alarm Companies' attorneys' hourly rates or to the specific time entries that Alarm Companies had provided to defendants.  In other words, rather than challenge the lodestar calculation, defendants chose to put all their eggs in one basket by arguing that Alarm Companies were not entitled to any fees at all, or in the alternative that their fee recovery should be reduced to reflect the fact that many of Alarm Companies' theories of relief went unadjudicated.  That was in marked contrast to the thoroughgoing, item-by-item challenge that defendants made to Alarm Companies' proposed costs, which resulted in Alarm Companies withdrawing (or properly recategorizing as expenses) the Major bulk of its demands for costs.  Although they never explicitly abandoned their challenge to Alarm Companies' hours, defendants thus left this Court with no argument or accounting by which it could reasonably reduce the hours element of the lodestar.[1]

This Court has taken the trouble to recount this curious history in exact detail to allay any doubt that might arise as to why this opinion treats the defendants as having posed no effective challenge to the lodestar figure that Alarm Companies have put forward.  After having adverted to a handful of specific objections to Alarm Companies' lodestar calculation in their "Initial Response," defendants never returned to the issue.  That necessitated this Court's reliance on the

---

[1] On that score Alarm Companies Supplemental Memorandum at 13 reports that after their having complained about defendants' noncompliance with the LR 54.3(d) requirement that an adversary challenging a fee request must provide its opponent with the corresponding information as to its own fees, defendants ultimately acknowledged having expended over $2.2 million on their defense.  That information substantially buttresses the result reached in this opinion.

lodestar that Alarm Companies put forward -- a treatment that accords with the caselaws'
teaching as to the most reliable basis for calculating fees:  the amount that Alarm Companies
have agreed to pay their attorneys.  As <u>Assessment Techs. of WI, LLC v. WIREdata, Inc.</u>, 361
F.3d 434, 438 (7th Cir. 2004) put it in a now-classic formulation of our Court of Appeals' choice
from among the three approaches that its appellate counterparts have taken to determining the
appropriate judicial effect to be given to lawyer-client fee arrangements:

> This court has not opined on the issue, but we think the Third Circuit has it right.
> The best evidence of the value of the lawyer's services is what the client agreed to
> pay him.

Here the evidence was not just that that Alarm Companies had agreed to pay the amounts set out
in the fees motion and supplemental motion, but that Alarm Companies had in fact been paying
those amounts all along (see A. Supp. Mem. Attach. 1 ¶¶ 9-10, noting Alarm Companies'
"history of prompt payment" of bills submitted by their counsel in this case).